CARL DITTMAR *vs.* GEORGE H. NORMAN.

Suffolk.   Nov. 21, 1874. — Sept. 16, 1875.   WELLS & DEVENS, JJ. absent.

An agreement between A. and B. recited that B. desired to obtain, in connection with A., the sole and exclusive right to use and sell dualin of which A. was the inventor, and provided that A. should manufacture it in suitable packages and cartridges as required by B. from time to time in quantities sufficient to supply the demand; that A. should have the exclusive right of manufacture and B. of sale; that all goods manufactured by A. should be consigned to B. for sale; that the design of the agreement was to create a demand for the use of dualin and to control the same for the joint interest of the parties concerned; that the net profits should be divided equally; that all losses by explosion or otherwise should be borne equally so far as loss of dualin was concerned, but that B. assumed no risk on the buildings or machinery of A.; that A. guaranteed the validity of the letters patent which he held upon the invention; that in case of A.'s failure to carry out the provisions of the agreement, B. was to have the right to manufacture dualin for the time during which the agreement was to be in force; that B. should sell no other explosive compound than dualin and common gunpowder, and should advance to A. on his requisition certain sums for labor and the expenses of manufacture, and for his personal account, and should furnish A. all raw material needed in the manufacture of dualin; and that the cost of the raw materials and the advances made should be charged to A. against the manufactured goods to be consigned by him to B. *Held*, that the agreement did not preclude A. from maintaining an action to recover the price of dualin sold by him to a third person, which had been manufactured under the contract out of materials furnished by B.

CONTRACT to recover $1140 on an account annexed for dualin sold by the plaintiff to the defendant.

At the trial in the Superior Court before *Pitman*, J., without a jury, the plaintiff testified that previously to the time of the sale of the dualin to the defendant he had entered into a contract

with the Laflin & Rand Powder Company, of New York, a copy of which contract is printed in the margin, and under which the parties had for some time acted ; * that at the time of the sale

---

* " This memorandum of agreement made and entered into by and between Carl F. W. E. Dittmar, of Boston, in the State of Massachusetts, party of the first part, and the " Laflin & Rand Powder Co.," a corporation formed and existing under and by virtue of the laws of the State of New York, party of the second part, witnesseth as follows :

" Whereas the said party of the first part is the inventor and true discoverer of the explosive compound called by him ' dualin,' for which and relating to which he has obtained three several letters patent of the United States of America, to wit: Number 98,854, granted on the 18th day of January, A. D. 1870, for ' improvement in explosive compounds.'

" Number 99,069, granted on the 25th day of January, A. D. 1870, for an improved explosive agent, called 'xylogdoline,' and

" Number 99,070, granted on the 25th day of January, A. D. 1870, ' for an improvement in the manufacture of xylogdoline and other explosive agents, which three several letters patent are now the property of the said party of the first part ; and whereas the said party of the first part is now engaged in the manufacture and production of ' dualin,' at Neponset, Mass.

" And whereas the said party of the second part desires to obtain, in connection with the said party of the first part, the sole and exclusive right to use and sell to others said ' dualin,'

" Now, therefore, in consideration of the premises and of the mutual agreement of the said parties, as hereinafter set forth on the part of each, the said parties do hereby covenant and agree as follows, namely :

" First. The said party of the first part agrees to manufacture and produce said ' dualin ' in suitable packages and cartridges, as required by the said party of the second part, from time to time, in quantities sufficient to supply the demand for the same, and all sales of the same produced and effected by the said party of the second part, it being fully understood and agreed that the said party of the first part has the sole and exclusive right to manufacture ' dualin,' except as hereinafter modified, and that the said party of the second part has the sole and exclusive right to sell such ' dualin ' under said letters patent, and such sole and exclusive rights are hereby granted, fixed and determined, as aforesaid.

" Second. The dualin manufactured and put up by the party of the first part, under this agreement, for sale by the party of the second part, shall be of the best quality in all respects, and shall be packed in cartridges and packages to the satisfaction of the party of the second part, and according to its directions by and through its executive officers.

" Third. All the goods manufactured by the said party of the first part shall be consigned to the said party of the second part for sale, and all orders for explosives given to or received by said party of the first part, are to be turned over and transferred to the party of the second part to be filled by it.

the contract had been broken by the Laflin & Rand Powder Company, and both parties had ceased to act under it; that a portion of the dualin sold to the defendant by the plaintiff had

"Fourth. The said party of the second part hereby accepts the said sole and exclusive right of sale of said dualin, and engages to enter into the business of selling the same to the best of its power and ability, the principal design being to create a demand for the use of dualin, and to control the same for the joint interest of the parties concerned.

"Fifth. The net profits arising from such sales shall be divided equally, share and share alike, between the said parties, and shall consist of the difference between the actual cost of manufacture and the net proceeds of sales. Such cost of manufacture to include transportation to New York; but neither in such cost of manufacture or expenses of sale shall be included any charge for rent or use of buildings, storage on the premises of the parties, or insurance other than marine insurance actually paid, or personal commissions, and no sales shall be made at less than eighty (80) cents per pound, unless by consent of both parties.

"Sixth. Any and all losses by explosion, or otherwise, shall be borne equally by the said parties, so far as loss of crude material or dualin is concerned; but the party of the second part assumes no risk on the buildings or machinery of the manufacturer.

"Seventh. Regular books of account, containing regular entries of all the matters pertaining to this agreement, and the carrying out of the same in detail, shall be kept by the said parties respectively, and free access shall be had to the same, at all reasonable times, by both of said parties or their legal representatives, and statements shall be made embracing all the particulars above mentioned in full, so that the net profits can be ascertained by both parties from time to time, as and when required by either; but not oftener than once in three months.

"In all cases the statements and accounts rendered and made out for the purpose of ascertaining the amount of the net profits shall be verified under oath by the party making or rendering the same, provided such verification is desired by the other party — a division of net profits shall be made as above stated every three months.

"Eighth. The said party of the first part hereby guarantees the validity of the said three letters patent, and agrees to defend the same and to protect said party of the second part in the rights hereby granted, and save them harmless in defending the same from any and all infringements thereof. The costs and damages of any suit in such protection or defence to be equally shared. The party of the first part agrees to pay to the party of the second part, at the expiration of the contract, the half part of the costs belonging to the party of the second part, with interest annually.

"Ninth. This agreement is binding upon the heirs, administrators, executors, successors and assigns of the said parties, and shall continue during the term of ten years; and in case the party of the first part shall make any new inven-

been manufactured under the contract before the breach and abandonment of the same, and out of materials furnished by the Laflin & Rand Powder Company under the contract, and filled into cartridges ; that when the defendant ordered the dualin from the plaintiff, after the breach of the contract, the portion manufactured as aforesaid not being of the size required by the defendant, the same was worked over by the plaintiff, being mixed with soda and heated as was necessary in such cases, and put into cartridges

---

tion or discovery in explosives or explosive compounds, or any improvement therein, or relating to the same in the matter of the explosion of the same, or otherwise, the provisions of this agreement shall apply thereto in all respects the same as though incorporated therein at the beginning.

" Tenth. In case of the default on the part of the said party of the first part, or his failure to comply with and carry out the provisions of this agreement on his part according to the true intent and meaning thereof, the said party of the second part shall have, and in that case the party of the first part hereby grants to the party of the second part the license and right to manufacture dualin under said letters patent for the aforesaid term of ten years, and to sell the same subject to the provisions of the contract, or to the division of net profits, and in order to provide for such case the said party of the first part covenants and agrees to teach some person to be named by the said parties and mutually agreed upon, the practical method of manufacturing dualin in all the particulars and manifestations thereof, to the best of his knowledge and ability, so that the person above referred to may understand the same fully and practically in all respects.

" Eleventh. The party of the second part shall sell no other explosive compound than said dualin and common gunpowder, and such other explosives as may be manufactured by the said party of the first part, during the term aforesaid of this agreement, unless it shall be in the interest of both parties.

" Twelfth. The party of the second part shall advance to the party of the first part on his requisition therefor, for the purposes of paying salaries, for labor, for incidental expenses of manufacture, and for his personal account semi-monthly, an amount for salaries one hundred dollars, for labor two hundred dollars if necessary, for his personal account two hundred and fifty dollars, and such further reasonable sums as may be required for incidental expenses of manufacture, and shall also procure and furnish to the party of the first part, on his requisition, all the raw materials needed to manufacture said explosives, in quantities sufficient to supply the demand created by the party of the second part, or the money necessary for the purchase thereof ; the said advances and cost of such raw material to be charged to said party of the first part against the manufactured goods to be consigned to the party of the second part as above provided.

" In witness whereof, the said parties have hereunto set their respective hands and seals, this fourth day of July, A. D. eighteen hundred and seventy-one."

of different size as desired; that the soda was part of what re-
mained on hand purchased with the funds of the Powder Com-
pany; that the new cartridges were only of nominal value, and
that dualin was not marketable until filled into cartridges.

It also appeared that a demand had been made upon the de-
fendant by the Powder Company, and that the defendant had
been forbidden by the company to pay the plaintiff before the
bringing of this suit. No testimony was offered by the defend-
ant.

Upon this evidence the judge ruled as matter of law that under
the provisions of the contract the plaintiff could not recover for
the portion of the dualin manufactured previously to its abandon-
ment, and ordered judgment to be entered for the balance only,
namely, $818.72. The plaintiff alleged exceptions.

It was agreed by the parties, and leave was given by the judge,
pursuant to the St. of 1874, c. 248, § 2,* that if the exceptions
should be sustained, judgment might be entered for $350 ad-
ditional; otherwise the present judgment to stand.

*A. Russ & T. H. Tyndale*, for the plaintiff.

*F. W. Hurd & E. P. Nettleton*, for the defendant, cited *Stev-
ens* v. *Briggs*, 5 Pick. 177; *Denny* v. *Cabot*, 6 Met. 82; *Bradley*
v. *White*, 10 Met. 303; *Judson* v. *Adams*, 8 Cush. 556; *Schenck*
v. *Saunders*, 13 Gray, 37; *Mansfield* v. *Converse*, 8 Allen, 182.

COLT, J. The cases relied on by the defendant to support the
proposition that the property sued for belonged wholly to another
at the time it was sold to him by the plaintiff, were cases of con-
tracts to manufacture, where the title to the materials furnished
and the goods produced was all the time in the one for whom the
work was done, and who originally owned the stock used. It is
not always easy to ascertain from the terms used the intention of

---

* "Whenever any party shall allege exceptions to, or appeal from, any
opinion, ruling, or direction of a judge of either of said courts in the course of
any trial with or without a jury, the judge may, whenever it would be just so
to do, give leave to such party to enter the verdict or judgment, or to alter or
modify the same, or to increase or reduce the damages, in such manner as the
Supreme Judicial Court, sitting in banc, shall determine. In such cases the bill
of exceptions, or report, or, in case of appeal, the record, shall state the leave
given, and the full court shall thereupon make such order, direction, judg-
ment, or decree, as is fit and proper for the further disposition of the case."

the parties. There is no great difficulty in this contract. The plain purpose of it was to secure for the plaintiff facilities in the way of advances in cash and material for the manufacture of a certain explosive compound called dualin discovered and patented by him ; and, on the part of the Laflin & Rand Powder Company, to secure the exclusive selling agency of the same. The company agree to supply the plaintiff, upon his requisition, with cash and raw material in advance, to be " charged to him " against manufactured goods " consigned " to them for sale. It declares the principal design to be to create a demand and to control the same for the " joint interest " of the parties. The letters patent were the property of the plaintiff, as well as the buildings and machinery required, and the terms used are appropriate to carry out the intention above stated. It is conceded that there was no partnership, as between themselves, here created between the plaintiff and this corporation ; *Whittenton Mills* v. *Upton,* 10 Gray, 582 ; and all the other provisions of the contract are consistent with the plaintiff's sole ownership of the materials advanced and charged to him, and with the interest of the company as selling agents of the plaintiff only. *Hitchings* v. *Ellis,* 12 Gray, 449.

It is true the word " consign " alone was held in *Schenck* v. *Saunders,* 13 Gray, 37, not to imply a title to the goods in the manufacturer, when controlled in its common meaning by the other provisions of the contract as applied to the subject matter. It is not so controlled in the contract now in question. The other provisions here show that the word was used in its obvious and common meaning, implying title in the consignor.

The exceptions are therefore sustained, and according to the leave granted by the judge below under St. 1874, *c.* 248, § 2, the entry must be

*Judgment for the plaintiff for the larger sum.*