## HENRY W. BURSAW *vs.* JOHN PEDERSON.

Middlesex.   October 6, 1933. — November 28, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, DONAHUE, & LUMMUS, JJ.

*Evidence,* Presumptions and burden of proof, Of quantity, Book entries. *Weights and Measures.*

At the hearing by an auditor of an action upon an account annexed for gasoline sold to and put in a tank of the defendant by the plaintiff, it appeared that the defendant had begun buying gasoline of the plaintiff about eight years before the bringing of the action and continued to do so down to within a month of that time, and the auditor, after making the necessary preliminary finding, admitted in evidence daily sales slips and ledger entries of the plaintiff showing the sales. There was evidence before him and he found that the basis of the slips was measurement by marks on a pole, which was not a sealed measure, of the gasoline put in the tank from time to time; that the defendant on one occasion emptied the tank as far as he could, leaving an undetermined amount therein, and, pouring in gasoline from sealed containers, made marks on a pole of substantially the same size; and that the marks on his pole did not correspond with those on the first pole. The auditor further reported that there was no direct affirmative evidence that the sales were made in good faith or that the defendant was not injured by the method adopted by the plaintiff, and that there was no evidence to the contrary; found that the amount of gasoline sold was not measured but was computed; drew the inferences that the sales were made in good faith and that the defendant was not injured thereby; found that the *prima facie* case established by the sales slips and ledger entries was not met by the defendant; and found for the plaintiff. The defendant contended that the *prima facie* case established by the evidence of the sales slips and ledger was met, that the plaintiff had not proved his case, and that the defendant was entitled to judgment. Judgment was ordered for the plaintiff, and, on exceptions by the defendant, it was *held,* that

(1) The facts reported by the auditor did not require a finding or ruling that the *prima facie* case established by the sales slips and ledger had been met and overcome by the evidence of the defendant;

(2) It was plain in the circumstances found by the auditor that the plaintiff and defendant understood and contracted on the basis that the quantity of gasoline sold and delivered was to be determined by computation and not by any measuring device recognized by statute;

(3) Sales and delivery of goods, wares and merchandise may be made without measuring and weighing devices described by law, if

such sales are made in good faith and the purchaser is not injured thereby;

(4) There was nothing in the evidence to show bad faith by the plaintiff or injury to the defendant.

CONTRACT upon an account annexed containing three hundred and twenty-four items showing alleged sales of gasoline, oil and motor accessories. Writ dated October 10, 1928.

In the Superior Court, the action was referred to an auditor. It appeared that the only items in dispute were those relating to gasoline.

Besides the material facts found by the auditor and stated in the opinion, the auditor stated in his first report as follows:

"Counsel for the defendant stated in his argument that he had caused to be computed the difference between the quantity of gasoline as represented by the marks on the stick which was used when the gasoline was sold and the quantity of gasoline in the tank as represented by the marks on the stick which was used in making the experiment, and that such computation showed, according to the mark on the first stick which represented one hundred, that it should have registered, according to the second stick, one hundred and twenty and that the mark representing two hundred gallons on the first stick should in fact have represented two hundred and thirty-six gallons according to the mark on the second stick.

"No evidence was introduced concerning any specific readings on any particular date or dates when the first stick was used in the manner hereinbefore indicated. Neither was any evidence introduced concerning what computations were made at the time when the gasoline was put into the tank by the plaintiff or his truck drivers.

"Counsel for the defendant in his argument called attention to the provisions of G. L. c. 98, §§ 26, 28.

"I decline to adopt the contention of the defendant."

Each party moved for judgment in his favor upon the original report of the auditor. The motions were heard by *Gray*, J., who, being in doubt as to the statement by the

auditor, quoted above, "I decline to adopt the contention of the defendant," recommitted the action to the auditor with instructions to report specifically the findings of fact and theory of law on which he proceeded in making such statement. The auditor then filed a supplementary report as follows:

"The plaintiff made out a *prima facie* case by the introduction in evidence of the sales slips and the ledger account showing deliveries to and charges made against the defendant.

"The only evidence introduced by the defendant to meet this *prima facie* case consisted of a description of the method adopted by the plaintiff in ascertaining the number of gallons of gasoline for which the plaintiff charged the defendant, as stated in my previous report, and evidence concerning the experiment conducted in the defendant's behalf, as set forth in my previous report, which resulted in a discrepancy between the marks on the rod used by the plaintiff and the marks on the rod used in conducting the experiment for the defendant.

"Counsel for the defendant in his argument contended that because the marks on the two sticks or rods did not agree, and because of the provisions of G. L. c. 98, he was entitled to a finding to the effect that the plaintiff's *prima facie* case had been met and overcome and that the defendant was, therefore, not chargeable for any gasoline for which charges were made in the plaintiff's account annexed.

"This contention I decline to adopt.

"The gasoline sold and delivered by the plaintiff to the defendant from time to time over a considerable number of years was not measured. The quantity was computed.

"Whether or not the rod used by the plaintiff in ascertaining the amount of gasoline in the tank prior to the delivery of any new sale of gasoline was accurate or whether or not it was correctly marked, I do not know as no evidence was introduced, except in so far as the defendant requests me to find that because the marks on the two rods did not agree, therefore, the marks on the plaintiff's rod were necessarily inaccurate and incorrect.

"There are several reasons for rejecting the defendant's contention:

"(1) No evidence was introduced concerning what mark or marks on the rod used by the plaintiff were used as readings to show the amount of gasoline in the tank on any occasion when gasoline was put into the tank.

"(2) No evidence was introduced by the defendant concerning the quantity of gasoline in the tank at the time when the experiment was conducted.

"(3) No evidence was introduced concerning what amount of gasoline, if any, was in the tank when the marks were made on the rod used by the plaintiff as the basis for a computation of the amount delivered into the tank. It is rather obvious that unless the gasoline was at the same level when the marks were made on the respective sticks, such marks could not and would not agree. There was no evidence that such was the fact. The man who conducted the experiment in behalf of the defendant estimated that there were ten gallons of gasoline in the tank which could not be pumped out and he used this as a base mark when he started to make the marks on the stick produced by the defendant. There was no evidence as to how much gasoline, if any, was in the tank when the marks were made on the stick used by the plaintiff.

"(4) Although the evidence was conflicting concerning who furnished the rod used by the plaintiff, both parties knew that the rod was being used by the plaintiff for the purpose of estimating or computing the number of gallons of gasoline in the tank before any new delivery was made. It was a method adopted and used by both parties and there was no evidence which would warrant any finding or inference that the plaintiff was practicing any fraud on the defendant in computing the number of gallons put into the tank at the time of any delivery.

"In my opinion, the defendant did not meet the plaintiff's *prima facie* case.

"So far as the statute is concerned, there was no evidence other than the discrepancy in the marks on the two rods

which would warrant a finding that the plaintiff used a false measuring device.

"As I have already stated, the rod or measuring device was not used to measure the number of gallons put into the tank. It was used exclusively to ascertain the number of gallons in the tank before any delivery was made.

"If, however, § 28 be applicable to this case and the court shall rule that the gasoline delivered to the defendant, and for which he is charged in the plaintiff's account annexed, was merchandise measured upon a measuring device not sealed according to law, then the interesting question arises as to whether or not, under said § 28, it is incumbent upon the plaintiff as a condition precedent to his right to recover the fair market value of said gasoline, to affirmatively prove that such sale was made in good faith and the purchaser was not injured thereby.

"No such direct affirmative evidence was introduced by the plaintiff.

"If, under the statute, the duty devolves upon the defendant to introduce evidence to show that the sale was not made in good faith and that the defendant as purchaser was injured thereby, then the defendant introduced no such evidence.

"Under these circumstances, I feel justified in drawing the inference, which I do, that the sales of gasoline by the plaintiff to the defendant, as set forth in his account annexed, were made in good faith and that the defendant as purchaser was not injured thereby."

A motion by the plaintiff for judgment upon the auditor's report then was heard by *Pinanski*, J., and was allowed, and there was a finding for the plaintiff in the sum of $2,574.61, with interest. The defendant alleged exceptions.

In this court, the defendant argued that the allowance of the motion for judgment for the plaintiff was error because "(1) the plaintiff could not recover the contract price, since the stick used was an unsealed measure; (2) the plaintiff could not recover under the provisions of G. L. c. 98, § 28; (3) the plaintiff could not recover,

since the stick used was an illegal measure and a false measure."

G. L. (Ter. Ed.) c. 98, §§ 26–28, read as follows:

"Section 26. Whoever uses, or has in possession with intent to use, a false or condemned weighing or measuring device for weighing or measuring any commodity bought, sold or exchanged, or for hire or reward, shall be punished by a fine of not more than fifty dollars. The possession of such weighing or measuring device shall be *prima facie* evidence of intention to use it in violation of law.

"Section 27. Whoever sells or, if by the custom of trade such weighing or measuring devices are provided by the buyer, buys, by any weighing or measuring device which has not been sealed according to law shall forfeit not more than twenty dollars to the use of the person suing therefor.

"Section 28. A seller may recover the fair market value of goods, wares or merchandise sold, if they were, for the purpose of the sale, weighed or measured upon weighing or measuring devices not sealed according to law, or weighed or measured by a person not a sworn weigher, measurer or surveyor, or by a person not authorized by law to weigh or measure the same, if such sale is made in good faith and the purchaser is not injured thereby."

*F. B. Turner*, (*K. A. Perry* with him,) for the defendant.
*L. G. Dennett*, for the plaintiff.

PIERCE, J. This is an action to recover upon an account annexed for the sale of gasoline, oil and motor accessories. The only items in dispute were those relating to gasoline, the defendant contending that the plaintiff did not deliver the amount of gasoline claimed. The case was referred to an auditor who filed a report in favor of the plaintiff. Each party filed a motion for judgment. The plaintiff's motion was allowed and the defendant duly excepted.

The auditor found the following facts: The plaintiff, in support of the items in the declaration, offered his ledger account showing charges against and credits to the defendant named in the account, together with the plaintiff's daily sales slips made out in duplicate by the drivers who made deliveries to the defendant. One copy of these slips

had in each instance been left with the defendant and the other was turned in by the driver to the plaintiff's bookkeeper and entries in the ledger account were posted directly from such slips to the ledger. The sales slips in possession of the plaintiff were produced and offered as an exhibit. The auditor states that he made the preliminary finding required by G. L. (Ter. Ed.) c. 233, § 78, and admitted both slips and ledger account as exhibits. He further found that the defendant began buying his gasoline, oil and other supplies from the plaintiff sometime in the early twenties and continued so to do down to and including the month of September, 1928. (The plaintiff's writ is dated October 10, 1928.) The deliveries of gasoline by the plaintiff to the defendant were made by the plaintiff's drivers from a tank wagon into a tank owned by the defendant and located under ground on the defendant's premises. The method of ascertaining the number of gallons of gasoline delivered into the tank of the defendant was for the driver of the plaintiff's truck to insert a stick into the tank for the purpose of ascertaining the amount of gasoline in the tank prior to any new delivery; by means of certain marks on the stick the amount of gasoline could be estimated or computed by the driver and the tank would then be filled to its full capacity. The amount of gasoline in the tank before any new gasoline had been put in was deducted from the number five hundred sixty-five (the capacity in gallons of the tank) and the balance was charged for by the plaintiff as the amount of gasoline delivered. The stick was not a sealed measure.

The report further discloses that shortly before April 4, 1928, the defendant became suspicious that he was not receiving the full amount of gasoline for which he was being charged; he, therefore, at some time after the action was brought caused an experiment to be conducted by a disinterested person, which is described as follows: A new stick was procured of substantially the same size and shape as that which had been used by the plaintiff. The tank was emptied in so far as the pump attached thereto would empty it, and the new stick was then inserted in the tank; this

showed that there was an undetermined amount of gasoline in the tank. The tank was then filled with gasoline by means of five-gallon cans which were sealed measures. After two cans of gasoline had been put into the tank and the gasoline allowed to settle, the stick or rod was inserted in the tank and a mark made on the rod showing the level to which the gasoline in the tank had risen. This process was repeated every time that two cans of gasoline were put into the tank until the tank was full. Whenever the number of gallons put in had amounted to one hundred, a mark to indicate that fact was put on the rod, and when the tank was full a mark to indicate the level of the gasoline at that time was made. The two sticks or rods were introduced at the hearing as exhibits and the marks on the rods did not correspond. After the rehearing the auditor stated that the "contention of the defendant" (which the auditor declined to adopt) was "that because the marks on the two sticks or rods did not agree, and because of the provisions of G. L. c. 98, he was entitled to a finding to the effect that the plaintiff's *prima facie* case had been met and overcome and that the defendant was, therefore, not chargeable for any gasoline for which charges were made in the plaintiff's account annexed." The auditor further found that the gasoline sold and delivered by the plaintiff to the defendant was not measured, that it was computed, and that there was no evidence as to whether the plaintiff's rod was correctly marked "except in so far as the defendant requests me to find that because the marks on the two rods did not agree, therefore, the marks on the plaintiff's rod were necessarily inaccurate and incorrect." At the conclusion of the supplementary report the auditor said: "Under these circumstances, I feel justified in drawing the inference, which I do, that the sales of gasoline by the plaintiff to the defendant, as set forth in his account annexed, were made in good faith and that the defendant as purchaser was not injured thereby." G. L. (Ter. Ed.) c. 98, §§ 26, 28.

The entire dispute arises from the method employed in measuring the gasoline. It is to be noted that the plaintiff did not declare under G. L. (Ter. Ed.) c. 98, § 28, and

so was not obliged to show his own guilt in proving his case, *O'Brien* v. *Shea*, 208 Mass. 528, 535; and there is nothing in the bill of exceptions to indicate that the defendant pleaded illegality in the contract sued on, *Cardoze* v. *Swift*, 113 Mass. 250, 252. The plaintiff declared upon *quantum meruit*, and the auditor found that he sold and delivered to the defendant the gasoline, oil and motor accessories set forth in three hundred twenty-four items in an account annexed, which the parties agreed were of the value of $2,617.61. It is plain in the circumstances found by the auditor that the plaintiff and defendant understood and contracted on the basis that the quantity of gasoline sold and delivered was to be determined by computation and not by any measuring device recognized by statute. Sales and delivery of goods, wares and merchandise may be made without measuring and weighing devices described by law, if such sales are made in good faith and the purchaser is not injured thereby. G. L. (Ter. Ed.) c. 98, § 28. There is nothing in the evidence contained in the bill of exceptions to show bad faith by the plaintiff or injury to the defendant.

*Exceptions overruled.*