CHADWICK & CARR COMPANY *vs.* ARTHUR H. SMITH.

Suffolk.    January 15, 1936. — January 28, 1936.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Evidence*, Writing or record made in regular course of business, Competency.   *Practice, Civil*, Discretionary control of evidence.   *Words*, "Consigned."

Under G. L. (Ter. Ed.) c. 233, § 78, and upon the required preliminary findings, a seller's office memorandum, in form a bill of lading, reciting goods "consigned" to a named person, was admissible as evidence of a sale of the goods to that person.

The exclusion of certain evidence offered to contradict evidence of the opposite party, but only remotely relevant, on the issue whether a sale was made to a corporation or to its officer personally, was within the discretion of the trial judge.

CONTRACT.   Writ in the Municipal Court of the City of Boston dated December 19, 1934.

Upon removal to the Superior Court, the action was tried before *Beaudreau*, J.   There was a verdict for the plaintiff in the sum of $2,391.71.   The defendant alleged exceptions.

*J. H. Morson*, for the defendant.

*R. I. Gottlieb*, for the plaintiff.

FIELD, J.  This is an action of contract on an account annexed to recover for store fixtures and equipment alleged to have been sold and delivered by the plaintiff to the defendant. There was a verdict for the plaintiff. The case comes before us on the defendant's exceptions to the admission and exclusion of evidence. Two exceptions only are argued by the defendant.

The sole issue in controversy between the parties at the trial was whether the goods referred to in the account annexed were sold and delivered to the defendant personally or to a corporation of which he was an officer. There was evidence, other than that hereinafter specifically considered, tending to show that the goods were sold and delivered to the defendant personally, and also evidence tending to show that they were sold and delivered to the Manhattan Food Stores Company, a corporation of which the defendant was an officer, having a store at 240 Elm Street, Somerville.

1. There was no error in the admission of the so called "bills of lading" offered by the plaintiff and admitted subject to the defendant's exception.

The "bills of lading" are three in number. Each is entitled "UNIFORM STRAIGHT BILL OF LADING Original — Not Negotiable." In each of them the plaintiff is named as shipper, "Campana Company" as carrier, and the defendant as consignee. Each document contains the words "Consigned to Arthur Smith Destination Elm Street, Somerville, State of Massachusetts." The defendant conceded "that the description of the articles in the several bills of lading is correct and that all said articles were duly delivered."

A witness called by the plaintiff testified, as recited in the bill of exceptions, that "the keeping of the books, records and papers of the plaintiff company was all under her supervision," and that the documents in question "were all records which were kept in the usual course of business of the plaintiff; that the shipper kept the bills of lading in duplicate and for everything that went out of the factory or store he made out one of these bills of lading so that what goes out can be checked and that the duplicate is sent to the book-

keeping department where it is checked up with the books to see if anything has gone out that is not charged and to see to whom it is made out, to see if it is the right party; that thereafter said duplicates are held for emergency sometimes to show that the goods have been delivered." This witness testified also "that Campana whose name appears on the three bills of lading was the man who did the trucking for the plaintiff company."

The fact that each of the documents introduced in evidence was in the form of a bill of lading did not prevent its being "a writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event" admissible "as evidence of the facts therein stated" under G. L. (Ter. Ed.) c. 233, § 78, if the preliminary findings required by the statute were made by the trial judge and the facts stated in such "writing or record" were relevant to the issue on trial. See *Bursaw* v. *Pederson*, 284 Mass. 471, 476–477. The case of *Rhoades* v. *New York Central & Hudson River Railroad*, 227 Mass. 138, and other cases in this jurisdiction relied on by the defendant were decided before the scope of the statute now embodied in G. L. (Ter. Ed.) c. 233, § 78, was greatly enlarged by St. 1930, c. 87, which became operative September 1, 1930. See Fifth Report of the Judicial Council (1929), Public Document 144; (1930) House Document 1008. The judge on the evidence could have made the preliminary findings required by the statute "that the entry, writing or record was made in good faith in the regular course of business and before the beginning of the civil proceeding . . . and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter." It is to be assumed that the judge made these findings. *Taylor* v. *Harrington*, 243 Mass. 210, 213.

Each document constituting a "writing or record" stated in substance that the goods described therein were "consigned" to the defendant personally. This fact was relevant to the issue on trial. In view of the close resem-

blance of the documents to bills of lading issued by common carriers, the statements therein that the goods were "consigned" to the defendant, considered in connection with the defendant's concession that they were duly delivered, is to be interpreted, as in such bills of lading, as indicating a transfer of title (see G. L. [Ter. Ed.] c. 108, § 38; *Edelstone* v. *Schimmel*, 233 Mass. 45, 48–49) rather than as indicating a consignment in the ordinary mercantile sense. See *International Trust Co.* v. *Webster National Bank*, 258 Mass. 17, 22–23; *Sturm* v. *Boker*, 150 U. S. 312, 326–327. The meaning of the word "consigned" is controlled by the context. Compare *Dittmar* v. *Norman*, 118 Mass. 319, 324. A record of such a consignment, therefore, like a charge on the books of a purported seller (*Lyman B. Brooks Co.* v. *Wilson*, 218 Mass. 205, 209, *Standard Oil Co. of New York* v. *Malaguti*, 269 Mass. 126, 129) is some evidence of a sale to the person named.

2. The defendant's exception to the exclusion of evidence offered by him cannot be sustained.

The plaintiff introduced in evidence statements in writing of its treasurer, Richard M. Carr, who had died before the trial, that the plaintiff did not do any business with the Manhattan Food Stores Company and "never knew anything about any such concern," but sold the goods to the defendant "direct," and that the plaintiff had "been doing business with him for thirty years." To contradict these statements the defendant, testifying as a witness, was asked by his counsel a question in this form: "Tell us what conversation you had with Mr. Carr about your business with him from 1900 up to the time of making this order." (The transaction in question took place in 1931.) The question was excluded. The judge stated "we are entitled to hear all that was said and done relating to the purchase of this merchandise. I will admit that. . . . I will exclude any other conversation which took place back in 1900." Counsel for the defendant asked: "From that time up through '31, your Honor excludes that?" The judge answered "No." The defendant made what was in substance an offer of proof "that over a long period of

years, Mr. Carr was the active man, had frequent transactions through Arthur Smith, when he was representing the Manhattan Market Company, and subsequently the Manhattan Food Stores, and therefore well knew the position and the employment and the agency that Mr. Smith represented when he came to him in connection with this present matter." No attempt was made by the defendant to introduce conversations during a period shorter than that covered by the question excluded. The exclusion of the question covering the period from 1900 to 1931, even if not required, was within the discretion of the trial judge.

*Exceptions overruled.*