## THE HOPE SHOE CO. v. ADVANCE WOOD HEEL CO.

*George R. Scammon* and *Walter M. Espovich* (of Massachusetts), (*Mr. Espovich* orally), for the plaintiffs.

*Chester T. Woodbury*, and *Jacob W. Shinberg* and *John A. O'Mahoney* (both of Massachusetts), (*Mr. O'Mahoney* orally), for the defendant.

PAGE, J. It is understood that no question is raised as to the sufficiency of the evidence to sustain the referee's findings. The evidence as to title was not made a part of the record, and no contention as to its sufficiency was raised at any point in the proceedings.

The real question for decision is whether, as a matter of law, the findings of the referee establish that title to the shoes rested, on November 19, 1929, in the plaintiffs or the Madian Shoe Company. The decision calls for an interpretation of the referee's report.

The salient parts of the report appear to be the following: "The Plaintiff claims an absolute ownership in this property as against the merchandise creditors of the Madian Shoe Company and alleges in support of its claim a verbal agreement entered into with the Madian Shoe Company . . . to the effect that the Plaintiff agreed to advance Madian his payroll and such other funds as he might require, and to generally finance his business in exchange for an agreement on his part *to ship all shoes made at his place of business to the said plaintiff.*" After reviewing the evidence as to advances made by the plaintiffs to the Madian Company, the referee added: "Mr. Madian states in effect that the Hope Shoe Company advanced the payroll and merchandise with the understanding that all of the output of the Madian Company *would be shipped to them.* This is directly in support of the contention of the plaintiff." We have supplied the italics.

Again alluding to the financing furnished by the plaintiffs, the referee said: "This continual financing, coupled with the fact that almost the entire output . . . went to the Plaintiff [the fact that four per cent of the product was sold to others was regarded by the Referee as a breach of contract], lends credence to the statement of the Plaintiff and of Madian that the agreement existed *as alleged,* and in view of these facts the Referee finds that such agreement did exist and was in existence at the time of the attachment of November 19, 1929." Again the italics are supplied.

Next in order the referee states that the defendant denies the existence of the agreement and claims that, if existent, it has no validity. "This," remarked the referee, "is largely a matter of law, and will be later considered. . . . As a groundwork to the legal questions," it was found that the plaintiffs and Madian both had knowledge that the forty cases of shoes attached were being made up. A part of these shoes, it was further found, were not upon special order, but were "stock shoes" which were being made, by the agreement of the plaintiffs and Madian, in order to use up material on hand. While this manufacture was in process, "the checks from the Plaintiff continued to be mailed to the Madian Company."

"The shoes," the referee continued, "were admittedly in an unfinished condition. . . . This is also material as to ownership from a legal point of view, as the Defendant's claim in general is that the ownership in unfinished goods does not vest in the purchaser until the goods are finished." The referee stated that the defendant relied upon P. L., *c.* 166, *s.* 19, Rule 2, of the sale of goods act.

This provision reads as follows: "19. *Intention.* Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer: . . . . *Rule 2.* NON-DELIVERABLE. Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them in a deliverable state, the property does not pass until such thing be done."

The referee ruled that this provision did "not appear to apply to this case, as a *different intention* is plainly evident from the conduct of the parties throughout the entire transaction covering the period of several months." He also pointed out that there was no contract to sell these specific goods, "but on the contrary a general agreement that all the products of the Madian Company were to be *sold* to the Plaintiff, *as found by the Referee previously.*" We have supplied the italics.

The report was recommitted for explanation of the apparent ambiguity caused by the use of the words "shipped" and "sold". In his amendment to the report, the referee found that by the word "sold" was intended no more than delivery under the terms of the agreement, "under which the products of the Madian Company was to go to the Hope Company in exchange for finances furnished by the Hope Company during the process of manufacture." Clearly, therefore, the agreement was found not to be the ordinary contract for sale.

Up to this point the referee has made only one ruling of law—that the statute relied on by the defendant did not apply. This ruling was based upon a finding that the agreement (not one for sale, but for delivery) provided that all goods produced by the Madian Company should "go" to the plaintiff. Further he found that the parties had an intention, which was "plainly evident" from their conduct that the vesting of title to the unfinished goods should not be postponed to the time of their completion; but that they in fact had a "different intention." This we take to be equivalent to a finding of intention that title to the materials should remain in the plaintiffs and that title to each increment of the goods in process should vest in the plaintiff as fast as the work progressed.

Immediately after the findings and the single ruling which we have summarized, appears the following: "The Referee, therefore, rules in law against the contentions of the Defendant and that the title to the goods vested in the Plaintiff." The counsel for the plaintiffs has argued that the first clause of that sentence is a ruling and that

the second clause is a finding of fact as to the intent of the parties. We think it clear, however, that the whole sentence states conclusions of law. Having already found the facts, the referee is now stating the consequence of the facts as matters of law. The facts found were that the parties agreed that the plaintiffs should have the whole product of the Madian factory, and that title to the unfinished goods should vest in them as the work progressed. The legal result was, as the referee ruled, that the goods were the property of the plaintiffs when the defendant attached them as the goods of the Madian Company.

Just before finding that the agreement existed as alleged, the referee remarked that it was "fair to assume that the finance was not furnished gratuitously, or without a return for the money so advanced, whether it was for payrolls, merchandise, debts owed by the Madian Shoe Company, or for whatever purpose." In case of a general finding, all findings of special facts necessary to sustain it are to be presumed unless special findings indicate the contrary. *Spaulding* v. *Mayo*, 81 N. H. 85; *Eleftherion* v. *Company*, 84 N. H. 32, 35; *Ahern* v. *Company*, 88 N. H. 287. It is to be presumed, therefore, that the referee found that the materials used in manufacturing the shoes replevied were furnished by the plaintiffs and were their property.

Where raw materials owned by one party are placed in the hands of another for manufacture, and the product is all to be delivered to the former, the title to the goods, in process and finished, depends upon the intention of the contracting parties. It is not always easy to ascertain that intention. *Dittmar* v. *Norman*, 118 Mass. 319, 323. That is particularly true when, as in the case at bar, there is no written agreement. The record before us discloses nothing to indicate conclusively that it was intended that the manufacturer should own the materials supplied. That was the fact, however, in the case last cited and another growing out of the same agreement, *Laflin &c. Powder Co.* v. *Burkhardt*, 97 U. S. 110, relied upon by the defendant. The same thing is true as to the other case cited by the defendant, *Hauselt* v. *Harrison*, 105 U. S. 401. In all three, the party advancing the funds for manufacture was clearly no more than a sales-agent of the manufacturer. The general finding of intention here made excludes that conclusion.

The result reached by the referee is sustainable upon the theory of a bailment of raw materials for manufacture. *Gleason* v. *Beers*, 59 Vt. 581 (logs to be made into lumber); *Johnson* v. *Allen*, 70 Conn.

738 (grain to be ground and sold); *First &c. Bank* v. *Schween,* 127 Ill. 771 (milk to be made into butter and cheese); *Sattler* v. *Hallock,* 160 N. Y. 291 (farm produce to be pickled); *Schenck* v. *Saunders,* 13 Gray 37 (leather to be manufactured into shoes). It makes no difference if the manufacturer pays for the labor. In the case at bar, the plaintiffs appear to have paid for the labor. Even where the bailee for manufacture adds materials of his own, but those furnished by the bailor form the principal part of the total, the bailor acquires title by accession. *Mack* v. *Snell,* 140 N. Y. 193. The bailor of leather to be made into brogans has been held to be the owner and entitled, immediately upon the completion of the brogans, to be repossessed of the property. *Mansfield* v. *Converse,* 8 Allen 182.

The result makes it unnecessary to consider the plaintiffs' exceptions to the admission of evidence.

*Judgment for the plaintiffs.*

All concurred.