ROCKPORT GRANITE COMPANY *vs.* PLUM ISLAND BEACH
COMPANY.

Essex.    January 16, 1924. — February 29, 1924.

Present: RUGG, C.J., DECOURCY, PIERCE, CARROLL, & WAIT, JJ.

*Contract*, Construction, What constitutes.    *Agency*, Existence of relation.
    *Estoppel.    Evidence*, Res inter alios, Competency, Books of account.
    *Practice, Civil*, Exceptions.

A contractor by a contract under seal with an owner of land agreed to con-
    struct a road, the contractor to furnish all necessary labor and materials
    and the owner agreeing to " pay directly to all parties furnishing ma-
    terials and equipment necessary in the performance of this contract
    all proper bills for the same."    The contractor made a contract with a
    granite company to furnish him stone, directing it to send all bills to
    him, the contractor.    This method was followed for some time, when,
    in the course of a certain conversation between the contractor and the
    owner, the contractor told the owner thereafter to send checks directly
    to the granite company and he would instruct the granite company to
    bill stone directly to the owner.    At the trial of an action brought by
    the granite company against the owner for stone furnished after such
    conversation, it was *held*, that
        (1) A reasonable interpretation of evidence giving different versions
    of the conversation was that the owner thereafter should exercise the
    right which was expressly given to him in the contract with the con-
    tractor, namely, " to pay directly to all parties furnishing materials; "
        (2) The evidence would not warrant a finding that a direct con-
    tractual obligation had arisen between the granite company and the
    owner superseding the owner's contract under seal with the contractor;
        (3) The provision in the contract between the owner and the con-
    tractor that the owner should pay directly to the parties furnishing
    materials could not be enforced by the granite company, which was not
    a party to the contract;
        (4) There was no basis for a claim that the owner was estopped to
    deny that he had purchased the stone from the granite company, the
    granite company not having been induced by the owner's conduct
    to do something which otherwise it would not have done, and to its
    detriment;
        (5) Evidence as to conversations between an officer of the granite
    company and the contractor, at which the owner was not present,
    properly was excluded;
        (6) In order for a card record kept by the granite company as part
    of its bookkeeping system, not known by the owner, to have been ad-
    missible in evidence, it was necessary for the requirements of G. L. c.
    233, § 78, to have been complied with;

(7) It was proper to refuse to permit an officer of the plaintiff to answer a question, put to him in direct examination, whether he ever had been told of the terms of the contract under seal between the owner and the contractor, especially in view of the fact that the contractor had told the witness that he had signed a contract to build the road.

CONTRACT for $6,526.87 upon an account annexed for stone chips and broken stone, alleged to have been sold and delivered to the defendant by the plaintiff. Writ dated August 15, 1921.

In the Superior Court, the action was tried before *Hammond*, J. Material evidence and exceptions by the plaintiff are described in the opinion. By order of the trial judge, a verdict was entered for the defendant. The plaintiff alleged exceptions.

*F. H. Tarr*, for the plaintiff.

*C. W. Dealtry*, for the defendant.

DeCOURCY, J. By a contract under seal, dated May 27, 1920, Thomas Fitzgibbon and his son, Thomas Fitzgibbon, Jr., copartners doing business as the Fitzgibbon Company (referred to therein as the "contractor"), agreed to construct a road on Plum Island for the defendant corporation. Among other things, the contractor was to furnish all the necessary labor and materials, to keep the work under his personal control, and take all responsibility therefor; was to be paid fifteen per cent of the cost of all labor employed; and, if the total cost should be less than $40,000, as agreed by the contractor, would be paid one half of the difference between the actual cost and that sum. One of its provisions was that "The Owner shall pay directly to all parties furnishing materials and equipment necessary in the performance of this contract all proper bills for the same." Before signing the contract Thomas Fitzgibbon, Jr., the active partner on this work, asked Rogers, the plaintiff's treasurer, for his price on stone; on June 10, in writing he accepted the plaintiff's price of $3.75 per ton, the quantity to be approximately twenty-five hundred tons, and directed the plaintiff to " send all bills on this contract and mail to Fitzgibbon Co." According to the testimony of Fitzgibbon, Jr., he told Rogers on June 10 that he had " signed a contract to

build a road at Plum Island," and discussed it with Rogers, " outlining the whole intention of the contract."

Thereafter the plaintiff made shipments of stone, billed to " Fitzgibbon Company; " and these were paid for by said contractor, after sending a corresponding bill to the defendant and receiving payment therefor. It is unnecessary to go into details, as the plaintiff concedes and its treasurer testified that for stone shipped prior to September 20 the defendant was under no obligation to it. In view, however, of the suggestion in the plaintiff's brief, that the written agreement between the defendant and the Fitzgibbons may be interpreted as making the latter the agent of the beach company, it may be said that nothing therein authorized this independent contractor to purchase materials on the credit of the defendant. *New England Structural Co.* v. *James Russell Boiler Works Co.* 231 Mass. 274. See *Harding* v. *Boston,* 163 Mass. 14, 18.

The real claim of the plaintiff is, in substance, that for all shipments made subsequent to September 20, 1920, the defendant became directly liable to the plaintiff by virtue of a new verbal contract, authorizing the plaintiff to charge such shipments to the defendant. The basis for this claim is an alleged conversation at Plum Island between Fitzgibbon, Jr., and Draper, treasurer of the beach company, on some day between September 8 and September 20. It appears that the defendant had sent its check direct to the plaintiff, in payment of the bill of August 17 to the Fitzgibbon Company. Thomas Fitzgibbon, Jr., testified, with reference to this conversation, that he told Draper they " must have thought that the Fitzgibbon Company were getting a rake-off . . . when they sent a check directly to the Rockport Granite Company, so he told them to send everything directly from this on to the Rockport Granite Company; " and that he (Fitzgibbon) " would instruct the Granite Company to bill the stone directly to Draper and Dowling, directly to the Plum Beach Island Corporation, and Mr. Draper said it was all right, that it was satisfactory." His testimony was not concluded, because of his illness. When recalled on a subsequent day his version of the same

conversation was that " he said to Draper that as he (Draper) had sent a check directly to the Rockport Granite Company, and since the work was practically all extra work just now, and that the Fitzgibbon Company was not getting anything out of the contract, if satisfactory to him, he could continue sending the check there. Mr. Draper said that he would; that it was satisfactory to him." This was substantially repeated on his cross-examination. In a letter which he testified was sent to the defendant on September 20, 1920, — but which the defendant apparently did not receive and never answered, — appears " They [Rockport Granite Company] . . . wrote me that you had sent check direct to them for previous shipment. I have instructed them to make out all bills in the future to the Plum Island Beach Co. assuming that this is the way you wished it done. I will approve the same and forward them to you. Trusting this is satisfactory," etc.

Without further recital of the differing versions of this alleged conversation, it seems to us that the reasonable interpretation of it is, that the defendant should thenceforth exercise the right which was expressly given to it in its contract with the Fitzgibbons, namely, to " pay directly to all parties furnishing materials;" a right which it had not exercised until it paid the plaintiff for the shipment of August 17. That this is what they meant, whatever the language they used, seems clear in the light of their subsequent conduct. For instance, Fitzgibbon never told the defendant that he had undertaken to make it directly liable to the plaintiff for the stone. He did not even inform the defendant what amount or kind of stone he had contracted to take from the plaintiff. He testified that he had " the right to buy material for this roadway wherever he pleased, and he did so;" that " any payments would be charged to the account of Fitzgibbon Company, and that he therefore had the right, and insisted upon the right, to O.K. bills for material." So far as the record shows, Fitzgibbon acted on the understanding, after as well as before September 20, that his contract remained in force. The conduct of the Plum Island Beach Company indicates that it also acted

throughout under its contract with Fitzgibbon. It did not claim, much less attempt to exercise, a right to buy stone for the roadway. It never was informed by Fitzgibbon that he undertook to subject it to a liability to the plaintiff; nor did the plaintiff, in writing or by telephone, notify the defendant that Fitzgibbon had purported to make a new contract for it direct with the Granite Company. Finally, the plaintiff itself continued to send the barges of stone with the shipping receipts marked "Loaded for Fitzgibbon Co.;" it sent its bills, not to the defendant but to Fitzgibbon; and whenever prior to October 28 the defendant's name appeared thereon it was "for account Fitzgibbon Co." When payments were slow, it was to the Fitzgibbons that the plaintiff telephoned or wrote. And after it sent a bill made out to the defendant, October 29, 1920, the defendant repudiated liability by sending no more checks. As late as June 6, 1921, some six months after the Fitzgibbon Company had left the work, the plaintiff in its letter to the defendant wrote, "This material was furnished to you by us for the Fitzgibbon Company, and we were instructed under date of Sept. 20, 1920, in accordance with your contract with them, that you were to pay for all material." No suggestion was made that a new contract, based on the conversation and letters on or about September 20, established a direct liability of the defendant to the plaintiff. Considering the whole voluminous record, we are of opinion that the evidence would not warrant a jury in finding a direct contractual obligation to the plaintiff on the part of the defendant, superseding its written contract with the Fitzgibbons. And, as already stated, the provision therein that the defendant should pay directly to parties furnishing materials, cannot be enforced by the plaintiff, which was not a party to the contract. *New England Dredging Co.* v. *Rockport Granite Co.* 149 Mass. 381. *New England Structural Co.* v. *James Russell Boiler Works Co. supra.*

This conclusion renders it unnecessary to consider the authority of the treasurer, Draper, to make or ratify such a new oral agreement, in lieu of the sealed instrument executed by the president. See *Sears* v. *Corr Manuf. Co.*

242 Mass. 395.  It may be added that there is no basis for a claim of estoppel.  The plaintiff was not induced by the conduct of the defendant to do something which otherwise it would not have done, and to its detriment.  The defendant never requested the plaintiff to furnish the stone. *Nelson* v. *Wentworth,* 243 Mass. 377, 379.  The plaintiff has not argued that there was any novation.

Certain exceptions relating to evidence were argued; and we treat the others as waived.  There was no error in excluding the testimony of Thomas Fitzgibbon, Jr., that he told Louis A. Rogers, assistant treasurer of the plaintiff, that he would see Draper; nor in excluding the testimony of said Rogers that Fitzgibbon, Jr., told him that he had informed the Plum Island Beach Corporation that if payment was not made the shipments of stone would be stopped. The defendant's rights could not be affected by these conversations between third persons which were unauthorized and not brought home to it.  Even if the exclusion had been erroneous the plaintiff could not have been harmed thereby as the same evidence got before the jury from other witnesses during the trial.  The same is true of the excluded testimony of said Louis A. Rogers, that Fitzgibbon, Jr., instructed him to send a statement of the account to the Plum Island Company and it would pay the account direct; and the proffered testimony of C. Harry Rogers, as to what Fitzgibbon told him in September about a conversation he (Fitzgibbon) had with the defendant.  Indeed there was no offer of proof as to what this alleged conversation was.  The exclusion of the card record kept by the plaintiff as part of its bookkeeping system was justified because the offer of proof made did not comply with the requirements of G. L. c. 233, § 78 as to proving books of account.  Moreover, the change in the plaintiff's books had already been testified to by Rogers. The witness Louis A. Rogers was asked whether he ever had been told the terms of the contract between the defendant and the Fitzgibbons.  We find no error in the exclusion of this testimony.  The witness had been told by Fitzgibbon, Jr., that he had signed a contract to build the road.  If he was ignorant of its contents (although Fitzgibbon testified

to the contrary), it was because he failed to inquire. He never asked the defendant about its terms.

As an examination of the entire record discloses no reversible error, the exceptions of the plaintiff must be overruled.

*So ordered.*