EDMUND A. ROTHWELL vs. THE FIRST NATIONAL BANK OF BOSTON & another, executors.

Norfolk. April 2, 1934. — May 25, 1934.

Present: RUGG, C.J., PIERCE, FIELD, DONAHUE, & LUMMUS, JJ.

*Evidence,* Declaration of deceased person, Relevancy, Competency. *Practice, Civil,* Exceptions: what contentions open; Conduct of trial.

At the trial of an action against the executor of a will for an alleged conversion of property of substantial value by the defendant's testator, who was the father of the plaintiff, the defendant contended that the property never had belonged to the plaintiff, and the plaintiff contended and introduced evidence to show that his father had determined to convert the property to his own use and to support his misconduct by false statements in certain documents that the property was his. Upon exceptions by the defendant after a verdict for the plaintiff, the record showed that, under G. L. (Ter. Ed.) c. 233, § 65, the defendant offered in evidence a declaration by the father to the effect that the plaintiff had no substantial property and was dependent on the father for support, and that the trial judge excluded the declaration, subject to the defendant's exception. The record did not show that the judge had made the preliminary finding specified in the statute. *Held,* that in the absence of such preliminary finding, the exception to the exclusion of the declaration could not be sustained.

This court, assuming that a certain declaration by a decedent, inadmissible under G. L. (Ter. Ed.) c. 233, § 65, at the trial of an action against the executor of his will, was admissible under § 66, *held,* that an exception to the exclusion of such declaration could not be sustained where the record showed that the entire discussion by counsel as to its admissibility at the trial was directed to the question of its admissibility under § 65, and that the trial judge had no reason to suppose that it was offered under § 66.

At the trial of an action against the executor of the will of the plaintiff's father for an alleged conversion by the father of the plaintiff's property, the trial judge, subject to the defendant's exception, excluded evidence that the plaintiff had stated that he had discovered evidence of certain transactions by his father with respect to a corporation, that the plaintiff had advised the bringing of an action by that corporation against his father's estate, and that such an action had been brought by the same counsel who represented the plaintiff in his action; and refused to permit the defendant in the son's action to

cross-examine the plaintiff along the lines of the evidence excluded. Such alleged transactions by the father and the corporation's cause of action based thereon had no connection with the issue being tried in the son's action. Counsel for the defendant, while declaring that the action by the corporation was "a false, base charge, brought solely for the purpose of harassment," did not suggest that the plaintiff had admitted or might admit it to be such. *Held,* that

(1) The evidence excluded would not have a tendency to discredit the plaintiff or his cause of action unless an unworthy motive prompted the plaintiff in what he did with respect to the matters to which such evidence pertained;

(2) The trial judge was not bound to permit the defendant to open or try the collateral issue as to the son's motive;

(3) The exception must be overruled.

TORT. Writ dated January 16, 1930.

The action was tried in the Superior Court before *F. T. Hammond,* J. Material evidence is stated in the opinion. There was a verdict for the plaintiff in the sum of $41,291, of which the plaintiff subsequently remitted all in excess of $36,000. The defendants alleged exceptions.

*F. H. Stewart,* (*F. X. Daly* with him,) for the defendants.

*E. V. Grabill & W. J. Good,* for the plaintiff, submitted a brief.

LUMMUS, J. The plaintiff brings this action of tort against the executors of the estate of his father James E. Rothwell for the alleged conversion of six hundred shares of common stock and ten shares of preferred stock of Carr Fastener Company, and twenty-six unregistered bonds of Utah Metal and Tunnel Company. The testimony of the plaintiff was in substance as follows.

The plaintiff received three hundred shares of common stock in 1918 as a gift from the father, and received the other three hundred shares in 1921 as a stock dividend. The stock stood in the name of the plaintiff until, early in November, 1927, the plaintiff indorsed all the stock certificates in blank at the request of the father, with the understanding that the father might use them if necessary in making a financial settlement with the plaintiff's then wife Katharine in connection with divorce proceedings pending in Nevada which resulted in a decree of divorce on July 5, 1928, and should return them if not so used. On No-

vember 30, 1927, the father caused the common stock to be transferred into the name of a confidential friend, Helen S. Byrne, who held them in trust for purposes prescribed by the father. He caused the preferred stock to be transferred into his own name on July 10, 1928.

The bonds were, for the most part, a gift to the plaintiff from the father in 1919. They were kept in a safe deposit box held by the plaintiff and his father jointly, in an envelope marked with the plaintiff's name. In December, 1927, the plaintiff and the father visited the safe deposit box of the latter in another company, and the plaintiff was surprised to see the bonds there. The father explained that he had removed them for safe keeping. Finding that the coupons had not been cut, the plaintiff cut and collected them, but left the bonds without objection in the father's box. On July 11, 1928, without the knowledge of the plaintiff, the father, by an instrument in writing, declared that he held the bonds as trustee for himself for life, with remainder to the trustee under a trust deed which the father had executed on June 29, 1928.

The plaintiff was in New York when the divorce decree was entered in Nevada on July 5, 1928. On July 12, 1928, the father started for Europe by way of Montreal. In Europe the father had a shock, and on his return in October, 1928, he was not in a condition to discuss affairs. Consequently the plaintiff had no talk with him after the divorce. The father died on November 20, 1928, having disposed of his property by the trust deed of June 29, 1928, supplemented by a will which made some provision for the plaintiff. The plaintiff testified that "some arrangement had been executed some time in the year 1927 as to the financial support of his wife Katharine"; that he did not know prior to the death of the father that the latter had undertaken to pay Katharine $300 a month; that he never made any claim for stocks or bonds held for him by the father until he did so by his attorneys on February 14, 1929, although he had had considerable talk with the widow and with a cousin who was one of the executors. The plaintiff contested the will, and a compromise resulted.

The defendants, on the other hand, contended that the stock and the bonds never really belonged to the plaintiff, but that the father merely permitted the stock to stand in the name of the plaintiff for convenience, in order that the plaintiff might receive the income directly as an allowance, without the necessity of action by the father.

The jury returned a verdict for the plaintiff. The only exceptions argued relate to the exclusion of evidence offered by the defendants.

The defendants offered to prove by a stenographer a copy of a letter, dictated by the father on July 5, 1928, and addressed to Inez Ingalls, whom the plaintiff intended to marry as soon as his divorce decree should be entered, and whom he did marry on July 7, 1928. There was no evidence that this letter was ever received or mailed, or that the plaintiff ever knew of it. Therefore it stood merely as a declaration by the father to the stenographer. In substance the father expressed his best wishes and his sorrow that he could not attend the wedding, but stated that the plaintiff "with what I am helping him" had an income of about $200 a month, which was insufficient to maintain his accustomed style of living, and that the father, having "promised to take care of Katharine," could not increase his allowance to the plaintiff. The defendants contended that this letter ought to be admitted as a declaration that the plaintiff had no substantial property, but was dependent on the father for support.

G. L. (Ter. Ed.) c. 233, § 65, provides: "A declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant." The conditions making the declaration admissible must be found by the trial judge to exist before it can be admitted. It is true that the admission of the declaration imports such a preliminary inquiry and finding if nothing to the contrary appears. *Tenney* v. *Foss*, 268 Mass. 69, 71. *Murphy* v. *Hanright*, 238 Mass. 200, 206. But where as in this case the judge excludes the declaration, his action cannot be pronounced

erroneous unless the record shows that he has made an affirmative finding that the statutory conditions have been fulfilled, or has committed some error of law with reference to the preliminary question. *McSweeney* v. *Edison Electric Illuminating Co.* 228 Mass. 563. *Bodfish* v. *Cross,* 235 Mass. 428. *Crowley* v. *O'Donnell,* 238 Mass. 475, 476. *Kelley* v. *Jordan Marsh Co.* 278 Mass. 101, 106, 107.

Although the plaintiff at one point testified that "his father was a cultured gentleman and a man of high integrity," the substance of the plaintiff's case was that the father had determined to convert to his own use the plaintiff's securities and to support his misconduct by false statements in formal documents that the securities were the property of the father. The good faith of the father in making the declaration had to be found by the judge upon the evidence before the declaration could be admitted in evidence. The judge did not find that the conditions of the statute had been satisfied. Therefore the exception to the exclusion of the declaration, so far as it was offered under the statute cited, cannot be sustained.

The defendants, however, insist that the declaration was admissible under G. L. (Ter. Ed.) c. 233, § 66, which reads: "If a cause of action brought against an executor or administrator is supported by oral testimony of a promise or statement made by the testator or intestate of the defendant, evidence of statements, written or oral, made by the decedent, memoranda and entries written by him, and evidence of his acts and habits of dealing tending to disprove or to show the improbability of the making of such promise or statement, shall be admissible." This section is narrower than the other, in that it relates to the declarations or conduct of one person in one sort of case. But it requires no preliminary finding of good faith or other conditions. These two statutes operate concurrently and independently. *Brooks* v. *Holden,* 175 Mass. 137, 140. *Huebener* v. *Childs,* 180 Mass. 483. We assume without deciding that the cause of action in this case "is supported by oral testimony of a promise or statement made by the testator" within § 66, and that the evidence offered and

excluded was admissible under that section. See *Huebener*
v. *Childs*, 180 Mass. 483; *Whitcomb* v. *Whitcomb*, 217 Mass.
558, 564; *Loweth* v. *Bradford*, 227 Mass. 584.

It does not follow, however, that there was error in its
exclusion. Counsel for the defendants said that he offered
the evidence "as a declaration of a deceased person under
the statutes . . . regarding the subject matter of his rela-
tions with his son and the oral promises which the son has
testified that his father made to him." Counsel for the
plaintiff observed that "there are a number of prelimi-
naries that have to be proved with respect to such declara-
tion." Counsel for the defendants answered, "I have in
mind what my friend suggests, and I desire to call to his
attention and that of the court the fact that his client has
testified that his father was a man of highest integrity, and
on that the question of good faith would seem to have been
taken out of the case, if counsel raises it." He added,
"This is a declaration . . . by a decedent, made prior to
the litigation in this case, at a time when no controversy
was pending, by a man who was confessedly of high in-
tegrity. . . . We submit that all the conditions required
under the statute are fulfilled." Plainly the judge had no
reason to suppose that the evidence was offered under
§ 66, when the whole discussion was directed to the re-
quirements of § 65. The duty of a judge is performed
when he rules correctly upon the point presented to him.
*Anderson* v. *Beacon Oil Co.* 281 Mass. 108. An exception
to the exclusion of evidence cannot be sustained by show-
ing that the evidence was admissible upon a ground neither
obvious nor actually taken. *Hathaway* v. *Tinkham*, 148
Mass. 85, 87. *Neal* v. *Boston*, 160 Mass. 518, 522. *Tobin*
v. *Brimfield*, 182 Mass. 117, 120. *Commonwealth* v. *Min
Sing*, 202 Mass. 121, 128. *Stevens* v. *William S. Howe Co.*
275 Mass. 398, 401, 402.

Another question of evidence remains. The defendants
offered evidence that the plaintiff told one Bell in Con-
necticut that he had discovered evidence that his father
"had covered up certain money transactions that were due
to The Meigs & Company, Inc." and that the plaintiff

advised the bringing of an action by that corporation against the estate of the father, and that such an action was later brought by the same counsel who represent the plaintiff. To the exclusion of this evidence, and to the refusal of the judge to permit cross-examination of the plaintiff along this line, the defendants excepted. The evidence did not relate to the occurrences or the cause of action in issue, and consequently did not fall within *Day* v. *Stickney*, 14 Allen, 255, and *Commonwealth* v. *Marcellino*, 271 Mass. 325. It related to an independent claim of another against the father's estate. It was as consistent with the performance of conscientious duty as with a desire to cause the estate to be mulcted unjustly. Unless an unworthy motive should be found, the evidence would not tend to discredit the plaintiff's cause of action or his testimony. To determine what motive prompted him, would require a considerable trial of a collateral issue. Although counsel for the defendants declared that the Meigs action was "a false, base charge, brought solely for the purpose of harassment," he did not suggest that the plaintiff had admitted or might admit it to be such. We are of opinion that the judge was not bound to permit that collateral issue to be opened or tried. See *Commonwealth* v. *Russ*, 232 Mass. 58, 79; *Commonwealth* v. *Sansone*, 252 Mass. 71; *Stevens* v. *William S. Howe Co.* 275 Mass. 398, 402; *Jennings* v. *Rooney*, 183 Mass. 577, 579; *Commonwealth* v. *Phelps*, 210 Mass. 109, 114; *Sullivan* v. *Brabason*, 264 Mass. 276, 286.

*Exceptions overruled.*