WILSON *v.* PRUDENTIAL INSURANCE CO. OF AMERICA.

1. TRIAL—INSURANCE—IRRELEVANT TESTIMONY AND ARGUMENT.

In action on endowment life insurance policy where sole question presented to and decided by jury was whether all premiums which became due prior to the death of the insured were paid by him to the insurance company, introduction of testimony relative to unfairness of endowment policies and argument thereon, which had no bearing upon the issue being tried, *held,* prejudicial and reversible error, notwithstanding trial judge's cautionary instructions, where the question of whether plaintiff was entitled to prevail upon the real issue was a close one.

2. EVIDENCE — SELF-SERVING DECLARATIONS — INSURANCE — REGULAR COURSE OF BUSINESS.

In action by beneficiary under endowment policy in which sole question presented for consideration by jury was whether insured had paid all premiums that became due prior to his death, court *held*, to have properly excluded from evidence copy of letter written by insurer in reply to insured's letter leaving it up to insurer as to whether policy should lapse since such reply letter was a self-serving declaration, prejudicial to plaintiff and not rendered admissible by Act No. 15, Pub. Acts 1935, amending 3 Comp. Laws 1929, § 14207, because written in regular course of business.

3. SAME—HEARSAY—LETTERS BETWEEN INSURER'S AGENT AND HOME OFFICE—REGULAR COURSE OF BUSINESS.

Letters written between local representative and home office of defendant insurer relative to changing insured's endowment insurance policy to some other type of insurance *held*, properly excluded under Act No. 15, Pub. Acts 1935, amending 3 Comp. Laws 1929, § 14207, in action at law by beneficiary against insurer where sole issue was nonpayment of premiums and such letters were hearsay and not a part of insurer's records made in the regular course of business relative to the payment or nonpayment of premiums on policy involved.

4. STATUTES—CONSTRUCTION.

The language used by the legislature must be interpreted in the light of the purpose sought to be accomplished.

5. EVIDENCE—STATUTES—RECORDS MADE IN REGULAR COURSE OF BUSINESS—SELF-SERVING DECLARATIONS—HEARSAY.

Statute providing that record of any act, transaction, occurrence or event shall be admissible in evidence in proof thereof if made in the regular course of business and it was the regular course of business to make such record at the time of such act or within a reasonable time thereafter and lack of such entry might be received in evidence that no such act took place was enacted to facilitate presentation of evidence, not to make that proof which is not proof, nor to change rules of competency or relevancy and is not to be construed as making records admissible when oral testimony of same facts would be inadmissible because self-serving or hearsay (Act No. 15, Pub. Acts 1935, amending 3 Comp. Laws 1929, § 14207).

6. INSURANCE — EVIDENCE — PRESUMPTIONS — INSTRUCTIONS — BURDEN OF PROOF.

In action against insurer by beneficiary of endowment policy, where sole issue was matter of nonpayment of premiums, proffered instruction should have been given that in such an action, when policy has been introduced and proper proofs of death of insured made, presumption arises that all premiums had been paid and policy had not lapsed and that upon submission of evidence to the contrary such presumption disappears but burden remains on insurer to establish nonpayment of premiums.

7. SAME—ORDINARY COURSE OF BUSINESS—PAYMENT OF PREMIUMS— EVIDENCE.

Plaintiffs' objection to question to insurer's representative as to whether in the ordinary course of business he would mention premium receipts also if received with policy when receipting for policy after death of insured *held*, properly sustained where sole issue was whether or not insured had paid all premiums which fell due before his death and such witness testified he did not recall receiving premium receipts from plaintiffs, beneficiaries under policy involved.

8. SAME—PAYMENT OF PREMIUMS—EVIDENCE.

Letter of attorney for plaintiffs, written to insurer after it had disavowed liability under policy, requesting that policy be sent him but not requesting surrender of premium receipts which plaintiffs claim were delivered at same time as policy to insurer's agent *held*, admissible as tending to show premiums had not been paid, where nonpayment of premiums was sole issue in case and record shows it to have been sole reason for refusal to pay insurance.

Appeal from Wayne; Toms (Robert M.), J. Submitted June 11, 1937. (Docket No. 85, Calendar No. 39,585.) Decided October 4, 1937.

Action by Charles Wilson and wife against Prudential Insurance Company of America, a New Jersey corporation, on an endowment life insurance policy. Verdict and judgment for plaintiffs. Defendant appeals. Reversed and new trial granted.

*Albert Summer* (*Morris Weller,* of counsel), for plaintiffs.

*Paul Oren* (*Donald McGaffey,* of counsel), for defendant.

North, J. This is the second time this case has been appealed to this court. The material facts, except as they are amplified hereinafter incident to questions presented on this appeal, are sufficiently stated in *Wilson v. Prudential Ins. Co. of America,* 276 Mich. 232. The sole question presented to and determined by the jury in the circuit court was whether all the premiums which became due prior to the death of the insured were paid by him to the insurance company. It is agreed by the litigants that all the premiums up to and including October 22, 1929, were paid. The following special question was submitted to the jury:

"Were all the premiums which became due after October 22, 1929, paid to the insurance company?"

This was answered in the affirmative by the jury, and is controlling of plaintiffs' right to recover in the absence of reversible error. Plaintiffs had judgment and defendant has appealed.

One of the assignments of error is that the argument of plaintiffs' counsel to the jury concerning the alleged unfairness of the policy was prejudicial. The issue which the parties in this case were trying before the jury was simple and clean-cut. Notwithstanding this, plaintiffs' counsel introduced testimony, especially upon cross-examination of defendant's witnesses, which had no obvious legitimate bearing upon the issue being tried, but instead was designed to arouse and appeal to the prejudice of the jury. Its purport was that the insurance company unjustifiably retained payments made to it by

an insured who carried an endowment policy, as did the insured under the policy involved in the instant case. We quote a part of the record:

"(*Cross examination by Mr. Summer*) Q. What is done with this fund which is used to build up the endowment, in case the insured dies before the maturity of the policy?

"*Mr. McGaffey:* \* \* \* I object to that, if the court please, because it seems to me it is getting far afield. \* \* \*

"*Mr. Summer:* (Addressing the court) That money may belong to the insured, that extra money that he pays. After all, he does pay it over and above the cost of the insurance. Why does it belong to the insurance company? If he buys his own money, they are certainly not entitled to it back. I don't know whether the court understands endowment insurance clearly, I know very few people do: \* \* \* In this case a man pays $60 for premiums for $2,000, and that the sum of $16 carries the insurance. \* \* \* Carries the risk, the additional sum is the so-called savings feature, or endowment feature which is paid to the insured after an expiration of 30 years, if he lives for 30 years. If he dies before the 30 years, I am trying to find out from this witness (an actuary of defendant company) what happens to the savings fund, which is paid over and above the cost of insurance."

The objection of defendant's counsel was overruled by the court and a lengthy, technical and involved answer made as to the methods pertinent to endowment insurance. When it came to arguing the case before the jury plaintiffs' counsel continued to pursue this prejudicial line of attack. Evidently his argument was not taken in full, at least it is not embodied in the record. But the following record was made:

"*Mr. McGaffey:* I will interrupt you here, counsel. May it please the court, in the course of counsel's argument, he is discussing endowment insurance, and there is no objection to his discussing it. He has now got to the point where he is talking about the situation of a man who dies shortly before the expiration of 30 years, or a 30-year endowment policy, and what happens to the money that has been paid in. The fact is, it is not based upon testimony as he is doing. The only testimony on the subject was Mr. Fitzgerald who said—

"*Mr. Summer:* I am not basing any statement on the testimony, but on the policy. All I told the jury is, that when a man dies you get $2,000 and no more; you don't get any more for the extra amount of money. * * *

"*The Court:* Then, you shouldn't use that as— you are saying something that hasn't anything to do with the issue. It could be very prejudicial, it could be a statement which would arouse resentment, and it is not involved.

"*Mr. Summer:* It is involved in this sense, if the court please; the insurance company has offered books and records, they want the jury to believe them. If I can show that this is an unfair contract that they entered into with an infant at the age of 16, in my mind it raises some question as to the veracity of the witnesses, and as to the honesty of their books and records.

"*The Court:* Not at all.

"*Mr. McGaffey:* I consider counsel's remark prejudicial. * * *

"*Mr. Summer:* The unfairness of the policy is right in the terms of the contract. * * * My purpose is to show the contract the insurance company entered into for the purpose of bearing upon the veracity of the insurance company in offering their records.

"*The Court:* What has the fairness or unfairness of the (insurance) contract got to do with the

veracity of the witnesses? What connection is there?

"*Mr. Summer:* I think there is a lot. \* \* \*

"*The Court:* You are seeking to impeach its fairness?

"*Mr. Summer:* That is right. \* \* \* It is my contention the fairness is in issue as bearing only upon the credibility of the testimony.

"*The Court:* I don't think there is any connection between the two."

Following the above colloquy between court and counsel, the argument to the jury in behalf of plaintiffs continued. We think the trend of counsel's argument and his repeated contention that the insurance policy on which suit is brought was an unfair policy, and from this he should be allowed to argue to the jury that the insurance company's records which had been introduced in evidence were not entitled to credence, was clearly prejudicial. As stated by the trial judge, plaintiffs were not in a court of equity and were not asking to have the insurance policy set aside; but instead were in court seeking to recover on the policy. Whether it was a contract which was advantageous to the insured or whether it was fair or unfair was in no way pertinent to the issue the jury was called upon to decide. It was a close question whether plaintiffs were entitled to prevail upon the real issue in the case, and under the circumstances it must be held that due to the course of conduct above indicated the issue was not fairly and impartially presented to the jury, and on that account a new trial must be ordered. In arriving at this conclusion we are mindful that the trial court in the charge to the jury said:

"You are not concerned at all with the fairness or the wisdom of this contract of insurance. Whether it was an advantageous contract for young

Wilson to have entered into does not concern you. It was a contract."

Notwithstanding this precautionary effort on the part of the trial judge it is reasonably certain that irreparable damage had already been done. Defendant is entitled to the judgment of an impartial jury without the poison of prejudice. This was not obtained in the instant case.

Subsequent to the alleged lapse of this policy by reason of nonpayment of premiums, defendant wrote a letter to the insured calling his attention to such lapse and urging him to take the matter up with their local representative or with the home office. The insured replied to defendant's letter, saying in part:

"In regards to policy to lapse I have been out of work for some time * * * and if you can carry on my policy why all right. If not why I will have to drop it."

These two letters were received in evidence. Defendant on May 21, 1930, wrote a letter in reply to that of the insured. In this letter of defendant it referred again to the nonpayment of premium and the lapse of the policy. The original not being produced, defendant offered in evidence a copy of the letter of May 21, 1930, but the court sustained plaintiffs' objection to its admissibility. The objection was lack of proof of the letter having been mailed, that it was a self-serving declaration on the part of the insurance company, and pertained to matters equally within the knowledge of the deceased.* The court sustained plaintiffs' objection. In considering the admissibility of this letter it must be borne in mind that the sole issue for the jury was defendant's

---

* See 3 Comp. Laws 1929, § 14219.—Reporter.

claim of nonpayment of premiums or lapse of the policy. As to that issue this letter was no more than a self-serving declaration, prejudicial to plaintiffs, and inadmissible. The letter in no way explained or modified the preceding correspondence between defendant and the insured. The portion which appellant asserts is material is in effect only a repetition of like assertions in its former letter to the insured. For reasons noted in connection with the next assignment of error this letter cannot be considered as a part of defendant's regularly kept records and was not rendered admissible as such by Act No. 15, Pub. Acts 1935 (amending 3 Comp. Laws 1929, § 14207). Exclusion by the trial judge from evidence of the copy of the letter of May 21, 1930, was not error.

During the time of the alleged default for nonpayment of premiums there was some talk between the defendant's local representative and the mother of the insured, who was a beneficiary and one of the plaintiffs, concerning a change in the type of insurance to one requiring payment of a smaller premium and thereby producing a larger reserve in the hands of the insurer which could and would be applied in payment of extended insurance for a longer term. No such change in the type of policy was accomplished, but in connection therewith certain letters passed between the local office and defendant's home office. This correspondence, which never came to the attention of the insured or either of the beneficiaries, was offered in evidence by defendant as tending to show a lapse in the policy of deceased. Here again it is defendant's claim that these letters as a part of defendant's regular method of disposing of transactions of that character were admissible in evidence under Act No. 15, Pub. Acts 1935

(amending 3 Comp. Laws 1929, § 14207), which in part provides as follows:

"Any writing or record whether in the form of an entry in a book or otherwise, made as a memorandum of any act, transaction, occurrence or event shall be admissible in evidence in all trials, * * * in proof of said act, transaction, occurrence or event if it was made in the regular course of any business and it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. * * * The lack of an entry regarding any act, transaction, occurrence or event in any writing or record so proved may be received as evidence that no such act, transaction, occurrence or event did, in fact, take place."

The court was right in sustaining the objection to this testimony. Clearly it was of a hearsay character and had to do only with communications between the agents or representatives of the defendant company. The issue to be tried in the instant case was whether there had been nonpayment of premiums which had caused the policy to lapse. The only records kept by defendant which as such were admissible under Act No. 15, Pub. Acts 1935, were those pertaining to the issue being tried (the nonpayment of premiums) and "made in the regular course of (its) business" and shown to have been made "at the time of such act, transaction, occurrence or event or within a reasonable time thereafter."

"It (the act) limits the admissibility of such records to any act, transaction, occurrence or event made in the regular course of any business where it was the regular course of such business to make such record at the time of such act, transaction, oc-

currence or event or within a reasonable time thereafter.'' *Gile* v. *Hudnutt,* 279 Mich. 358, 367.

The letters which had passed between the agents or representatives of defendant company were not a part of its regular records relative to the payment or nonpayment of the premiums on this policy, and therefore their exclusion was proper.

''In accordance with well established principles the language used by the legislature must be interpreted in the light of the purpose sought to be accomplished.'' *Commissioner of Insurance* v. *National Life Ins. Co. of United States of America,* 280 Mich. 344.

Concerning Act No. 15, Pub. Acts 1935, in one of our recent opinions we have said:

''The act does not make that proof which is not proof; nor does it purport to change the rules of competency or relevancy with respect to recorded facts. It merely provides a method of proof of an admissible 'act, transaction, occurrence or event.' * * * The statute should not be construed in a manner that would make the reports and records admissible, when the oral testimony of the same facts would be inadmissible.'' *Kelly* v. *Ford Motor Co.,* 280 Mich. 378.

Act No. 15, Pub. Acts 1935, was obviously enacted to facilitate the presentation of evidence. See 14 Michigan State Bar Journal, p. 35; *Johnson* v. *Lutz,* 253 N. Y. 124 (170 N. E. 517). Except as otherwise expressly stated in the act, it provides for a mode of proof if such proof is otherwise admissible; but this change in the mode of proof was not intended by the legislature (except as otherwise specifically provided in the act) to constitute a change in the rules of substantive testimony. Except within the

limits of well-established exceptions to the hearsay rule, the act does not permit hearsay evidence to be introduced under the guise of a self-serving record made by or in behalf of a litigant.

Appellant assigns error upon the court's refusal to give the following request to charge:

"Upon the introduction of the policy and the submission of proper proofs of death of the insured, a presumption arises that all premiums had been paid and that the policy had not lapsed. Upon submission of evidence to the contrary by the insurer, the presumption in favor of the insured disappears, but the burden is on the insurer to establish the nonpayment of premiums."

We are unable to find that the trial court, except by rather uncertain inference, alluded at all in the charge to the jury to the proposition that "upon submission of evidence to the contrary by the insurer, the presumption in favor of the insured disappears." Without holding that the failure so to state specifically to the jury constituted reversible error, we note in passing that the request was pertinent to the issue being tried and should have been given.

Because the case must be remanded for a new trial, it should be stated that the circuit judge was correct in sustaining plaintiffs' objection to the following question propounded by defendant to one of its representatives on direct examination:

"Q. Will you state, Mr. Wadsten, whether or not, in the ordinary course of your business, if you had received from Mrs. Wilson, in addition to the policy involved here, certain receipts for premium payments, would you, following your usual practice, have mentioned those receipts in the same receipt that was given for the policy?"

As may be inferred from the question, because the receipt given by Mr. Wadsten to Mrs. Wilson only acknowledged that she had turned over the insurance policy to him, without also mentioning the receipts for payment of premiums which she claimed were delivered to him at the same time, appellant contends the inference should be drawn that such premium receipts were not in fact delivered to Wadsten. Whether he received such premium receipts was a proper subject concerning which the witness could be examined; but it was of no consequence as to what in this respect he did in the ordinary course of his business. In this particular he testified as follows:

"*Q.* Do you recall receiving any receipts from Mrs. Wilson?
"*A.* No."

It was not error for the court to exclude testimony as to what the witness might have done in some other case or in the ordinary course of his business.

After defendant disavowed liability on the policy, plaintiffs' attorney wrote a letter to the defendant asking that the policy be mailed to him; but in this letter plaintiffs' attorney did not request the surrender of the premium receipts which plaintiffs claim were delivered at the same time as the policy to Mr. Wadsten as defendant's agent. Defendant offered this letter in evidence claiming that the circumstances above noted tended to show that the premium receipts were not delivered to Mr. Wadsten. So far as appears from this record the sole ground upon which defendant at all times refused to pay the insurance is that the policy lapsed because of nonpayment of premiums. It is a reasonable, if not a necessary, inference that plaintiffs and their

attorney at the time the letter was written knew this was the issue with which they would be confronted in this suit which was then in contemplation and commenced a month later. It was apparent that at the trial proof of the payments of the premiums would be of the utmost importance. The receipts showing the payments of premiums were obviously of as much consequence to plaintiffs as the policy itself. Under such circumstances we think the letter was admissible on the theory urged by defendant.

Other questions raised by appellant are not of sufficient merit to require discussion, and at least to some extent are not likely to recur upon retrial. The judgment entered in the circuit court is vacated and a new trial ordered. Appellant will have costs of this court.

FEAD, C. J., and WIEST, BUTZEL, BUSHNELL, SHARPE, POTTER, and CHANDLER, JJ., concurred.