Carr, J,
dissenting: I am unable to agree with the opinion of the majority of this Division.
This is an action on a policy of life insurance on the life of Henry A. McCarron in which the plaintiff, sister of the insured, was named as beneficiary. In order to show that the insured in his application for the insurance made false representations as to whether he had been attended by a physician or treated in a hospital, the defendant sought to make use of records kept by the United States Veterans’ Administration. It appeared that the records were kept in accordance with the rules and regulations promulgated by the Administrator of Veterans’ Affairs. The use of these records is regulated by the provisions of United States Code Title 38, sec. 456, which is as follows:
*430 “Files, records, etc., confidential and privileged. All files, records, reports, and other papers and documents pertaining to any claim for the benefits of the provisions of this chapter, whether pending or adjudicated, shall be deemed confidential and privileged and no' disclosure thereof shall be made except as follows:
(a) To a claimant or his duly authorized representative, as to matters concerning himself alone, when in the judgment of the director -such disclosure would not be injurious to the physical or mental health of the claimants;
(b) Where required by the process of a United States court to be produced in any suit or proceeding therein pending; or when such production is deemed by the director to be necessary in any suit or proceeding brought under the provisions of this chapter;
(c) In all proceedings in the nature of an inquest into the mental competency of a claimant, and in all other judicial proceedings, when in the judgment of the director such disclosure is deemed necessary and proper. ’ ’
The records referred to in the report are there described as “a flat record” but this is misleading* as according to statement of counsel the records are a collection of papers kept in a folder which contains ‘ ‘ all the correspondence and health records and data with reference to McCarron, and relates to all his rights of whatsoever nature while alive and after his death; and correspondence from sources other than the individual himself, charts made by other than doctors, correspondence from many sources; it includes a complete health record, including* all examinations made by any physician employed by the Veterans’ Administration, and the records of all hospitals which the veteran may have attended, while receiving care in accordance with the rules of the Veterans’ Administration; that the record contains other data with reference to Henry A. McCarron especially *431 information of importance concerning his war record, dates of enlistment and discharge, age, occupation, and other information of importance in connection with the determination of disability payments, bonus, etc.”
It is the contention of the defendant that these miscellaneous records are admissible in evidence in the trial of the pending case under Gen. Laws (Ter. Ed.) Ch. 233, sec. 78.
The defendant called one Welch who testified that he was assistant chief attorney and that he had in his custody the records of the Veterans’ Administration with regard to Mc-Carron and that it had been decided by the Administrator of Veterans’ Affairs and by the chief attorney to waive the privilege of confidence which is granted to veterans’ records by virtue of United States Code Title 38, section 456, and that the witness was present in court with authority to disclose the contents of these records when requested to do so by the presiding justice. He testified that according to the records in his possession McCarron was admitted to the Chelsea Naval Hospital on May 8, 1935 and continued to be a patient at the hospital until July 25, 1935; that the Veterans’ Administration had authority to send persons entitled to benefits under the Congressional Act to any hospital owned or operated by the United States Government. He also testified that according to the records McCarron received domiciliary care at the Soldiers’ Home at Togus, Maine, from March 6, 1937 to July 19, 1937; that this Soldiers’ Home is one of the sanitariums under direct control of the Veterans’ Administration.
The defendant then asked the following question:
“What do the records in your custody disclose with regard to the attendance, treatment, diagnosis, etc. of one Henry A. McCarron while he was a patient at the Chelsea Naval Hospital from May 8, 1935 to July 25, 1935?”
*432 Upon objection, this question was excluded and the defendant claimed a report.
Counsel for defendant having no knowledge of the contents of the records asked the court for permission to examine the witness to obtain information on which to make an offer of proof. The Court granted permission and counsel requested the witness to answer' the foregoing question for the purpose of making* such offer of proof. The witness then stated that under the specified conditions he could' not waive the confidential character of the records and that his authority to produce the records in court was that they should be disclosed upon statement by the presiding justice that said records be received in evidence. The witness stated that he would be willing to disclose the contents of the records if the presiding justice requested him so to do. Defendant’s counsel asked the Court to request a disclosure of the contents and the trial justice replied that he had made his ruling as to their admissibility and would make no further request to the witness with regard to the records.
The defendant claimed a report.
The defendant then asked the following question:
“What do the records in your custody disclose with regard to the attendance, treatment, diagnosis, etc. of one Henry A. McCarron while he was a patient at the Soldiers ’ Home at Togus, Maine, from March 6, 1937 to July 19, 19371”
On objection this question was excluded and the defendant claimed a report.
Counsel then to obtain information to make an offer of proof obtained permission to examine the witness to obtain information for this purpose, and asked witness to answer the foregoing question for that purpose with the same result as in the other instance.
This appeal could be disposed of very briefly. The burden is on the appellant to show that it is aggrieved. Dunham *433 v. Holmes, 225 Mass. 68, 70, Lariviere v. Boucher, 1937 A. S. 519, 521 and it has not shown this.
In neither question to the witness did the defendant ask that any record be produced and given in evidence. Its question was what do the records disclose with regard to the attendance, treatment, diagnosis, etc. Without stopping to consider to what length the “etc.” would lead us, it is clear that a keeper of a record cannot be permitted to state his conclusion of what the record shows. If the record is good evidence, it or a certified copy is the evidence to be introduced. Rothwell v. First National Bank, 286 Mass. 417, 420-421, Robbins v. Townsend, 20 Pick 345, 351, Wayland v. Ware, 109 Mass. 248, 250, Hanson v. South Scituate, 115 Mass. 336, 342, Commonwealth v. Richardson, 142 Mass. 71, 74.
If the question could be warped into meaning a call for the records relating to the attendance, treatment, diagnosis, etc. still there is nothing to show that the judge was wrong in excluding them. While there is evidence that the records were kept in accordance with the rules and regulations promulgated by the Administrator of Veterans’ Affairs and there is a presumption that a public officer acts in accordance with law, there is no evidence as to who made the reports, records, charts or the sources of the correspondence or what the “etc.” was or who was responsible for it. The trial judge made no finding on the conditions set forth in the statute as requisite to- the admission of the documents and it does not appear that he was asked to. In such situation it cannot be said that he was wrong in his exclusion of the evidence. Rothwell v. First National Bank, 286 Mass. 417, 420-421, Rockport Granite Co. v. Plum Island Beach Co., 248 Mass. 290, 295, Cali v. Caliri, 254 Mass. 488, 490, Gold v. Marshall, 260 Mass. 492, 493, Kelley v. Jordan Marsh Co., 278 Mass. 101, 106. Under these circumstances *434 how far the trial judge should go to the rescue of the defendant in making out a ground for appeal was a matter of discretion.
The judge would have been right in excluding the records even on questions properly presenting them as evidence.
If the defendant is correct in its contention then any record in any calling, however far removed from the parties, would be admissible if the few protective conditions were met. With the great increase in tort trials arising out of automobile accidents, since motor vehicle liability insurance has been required, it is well known to trial judges that defending insurance companies frequently have brought into court the folders of other companies containing records bearing on plaintiffs ’ connection with previous accidents. The contents of the folders have been used for the purpose of cross-examination unless papers signed by the adverse party could be introduced in evidence. If the defendant is right in its contention the contents of these folders would be admissible and there seems to be no reason why all insuring companies should not make records of all their insured for the use of each other or establish companies or detective agencies whose regular course of business would be to investigate parties especially upon notice of accident but before action brought. All such records would be admissible if the few protective conditions were met. Folders of such records could contain everything discoverable about the party from the cradle to the grave; his civil doings and his criminal indiscretions. (The records sought as evidence in the pending case are stated to relate to all McCarron’s rights of whatever nature while alive and after his death.) A trial might become a battle of folders: often with the folders all on one side. “Tour Honor here is the plaintiff’s ‘dossier’ containing everything necessary to decide the case. We have taken *435 the liberty also to enclose a finding slip in favor of the defendant”. Once in evidence no court of review could get them out and the law of evidence might be succeeded by the law of gossip. With the present Massachusetts Statute in its present phase on the books since 1930 it is remarkable that this fertile field of evidence has so far been overlooked and to the credit of the companies that record gathering companies have not been created as sources of evidence.
In 1920 the Commonwealth Fund appropriated money for the encouragement of legal research and a Legal Research Committee was established consisting of eight members including Benjamin N. Cardoza, then Associate Judge of the Court of Appeals in New York, Roscoe Pound, Dean of the Harvard Law School and Harland F. Stone, Associate Justice of the United States Supreme Court. They decided that reforms in the law of evidence should be considered and appointed eight gentlemen of the law schools and the bench including Edmund M. Morgan of the Yale Law School, Zachariah Chafee, Jr., of the Harvard Law School and John M. Wigmore of Northwestern Law School. These gentlemen not only knew their subject but were skilled in a vigorous use of the English language. These gentlemen devoted five years to their studies and produced a book of some ninety pages dealing with five subjects of the law of evidence. The fifth chapter deals with “Proof of Business Transactions to Harmonize with Current Business Practice”. There is not one sentence in this chapter which shows that the committee intended that such records of third parties as w;e are here considering should be admitted in evidence. After discussing the uncertain scope of the shop book rule they then show the various steps necessary and the numerous persons engaged in making the accounts of a larg’e business. They say that correspondence with manufacturers and wholesalers reveals among *436 other items “(5) In litigated eases many firms had never been compelled to furnish other evidence of an account than an affidavit containing a copy of the book account, while one or two, when required to furnish strict legal proof, had to abandon the claims.” They quote from Mr. Wigmore’s 1923 work on evidence in which he describes the difficulty of a business concern in producing in court all the employees taking part in the entries, due to change in personnel of the business, difficulty in ascertaining the ones concerned in multiple entries, and the prohibitive cost of producing the score of employees needed to identify each entry. See The Law of Evidence, Yale Un. Press 1937. They recommended an enactment which in one form or another was adopted in various states.
That the form drafted by these gentlemen was not the last word in expression is shown by the fact that in 1933 the Committee on Evidence of the National Conference of Commissioners on Uniform State Laws tried its hand and produced a draft which after another three years of debate and revision was approved by the Conference. Again in 1937 Mr. Boscoe L. Barron offered what Mr. Wigmore calls an improved form. This at least attempts to bring out into the open a provision which might help the defendant in this case. See Wigmore 3rd Ed. sec. 1520.
The statute recommended by the committee of the Commonwealth Fund was adopted in New York in its pristine purity. It came before the court of last resort in the case of Johnson v. Lutz, 253 N. Y. 124, under the following circumstances. The plaintiff was seeking to recover for the death of the intestate due to collision with the defendant’s truck. The defendant offered in evidence the policeman’s report of the accident filed by him in the stationhouse. The trial judge excluded it and the question on appeal was the *437 correctness of the exclusion. The court referred to -the report' of the Legal Research Committee of the Commonwealth Fund and stated that it was apparent that the Legislature enacted Section 374a in 1928 to carry out the purpose announced in that report which was to secure enactment of a statute which would afford a more workable rule of evidence in the proof of business transactions. It said “In view of the.history of Section 374a and the purpose for which it was enacted, it is apparent that it was never intended to apply to a situation like that in the case at bar”. “The amendment permits the introduction of shop books without the necessity of calling all clerks who may have sold different items of the account. It was not intended to permit the receipt in evidence of entries based upon voluntary hearsay, statements by third parties not engaged in the business or under any duty in relation thereto.”
Mr. Wigmore in his 1934 Supplement to his work on evidence section 1520 says: “The liberal interpretation of it (the Statute) by courts should serve to give the exception a rational relation to the search for truth. But much depends on whether the perverse stolidity of the juristic mind can be compelled by a few statutory words to leave its accustomed ruts. Johnson v. Lutz, N. Y., decided under the Statute shows how difficult it is to get out of those ruts”. And yet in the decision of Johnson v. Lutz, Cardoza then Chief Justice of the Court, a member of the Legal Research Committee of the Commonwealth Fund which appointed Mr. Wigmore among others on the Committee to study the laws of evidence and who had not the reputation of being stuck in any rut concurred in the opinion.
This case is one of those cited in the majority opinion.
The case of Penn. Mutual Life Ins. Co. v. Ireton, 57 Idaho 466; 65 Pac. (2d) 1032 cited in the defendant’s brief gets *438 it nowhere. The plaintiff insurance company attempting to cancel its life insurance policy by reason of misrepresentation of the insured defendant sought only to introduce affidavits.filed by the defendant himself with the Veterans’ Bureau in connection with his claim for veterans compensation and the only issue raised against them was that they were privileged communications.
In the case of Borucki v. MacKenzie Bros. Co., 125 Conn. 92, cited in the majority opinion, the defendant offered in evidence the original hospital records pertaining to the plaintiff as a patient; also, for the purpose of showing what analysis of the uneaten portion of the liverwurst disclosed, it offered the testimony of a state chemist from the laboratory where the analysis was made, who identified a record as the original kept by the laboratory. The plaintiff objected to the admission of these records on the ground that, not being “books of account”, they were not within the scope of section 1675c Cum. Sup. 1935. It was held that the records were not inadmissible on the ground upon which objection was made.
In Beverly Beach Club v. Marron, 172 Md. 471, cited by the majority, it was held that the fact that a hospital record admitted in evidence under Code (Supp. 1935) Art. 35, sec. 54A showed that plaintiff stated that his foot was cut by broken glass was not evidence of that fact, plaintiff himself testifying that he did not know what caused his injury.
In Gill v. Hudnutt, 279 Mich. 378, cited by the majority, it was held that hospital records were admissible but that as a nurse testified from them to refresh her recollection, the plaintiff was not prejudiced by their exclusion, but in Wilson v. Prudential Ins. Co., 281 Mich. 541, 550, et seq. it was said “Except as otherwise expressly stated in the act, it provides for a mode of proof if such proof is otherwise admissible: but this change in the mode of proof was *439 not intended by the legislature (except as otherwise specially provided in the act) to constitute a change in the rules of substantive testimony. Except within the limits of well established exceptions to the hearsay rule, the act does not permit hearsay evidence to be introduced under the guise of a self-serving record made by or in behalf of the litigant”.
In Conlon v. John Hancock Mut. Life Ins. Co., 56 R. I. 89, 91 cited by the majority the records of a certain sanatorium kept in the regular course of business, were held admissible “without the assistance of any Statute” though any doubt was removed by public laws 1928 chapter 1161.
A further though limited discussion of decisions under the Act in question may be found in Wigmore 3rd Ed. sec. 1530a.
At least in Massachusetts there is nothing in the history or development of Chapter 233, sec. 78 which leads to the conclusion that such records as were before the court in the.trial of this case are admissible in evidence.
Before 1913 the shop book rule was in effect in this state. The books of the shop keeper on his testimony that they were regularly kept were admissible to show the charges therein made but where entries were made by third parties or on information from third parties, their testimony was necessary to complete the evidence. Kent v. Garvin, 1 G-ray 148.
Chapter 288 of the Acts of 1913 was passed to obviate this difficulty and to make it easier for a party to introduce his account book in evidence. This Act was codified into G-en. Laws of 1921 as Chapter 233, sec. 78.
The Massachusetts Judicial Council recommended a change in the law, basing its recommendation on the report under the Commonwealth Fund, but it went no further. (Fifth Beport 1929.) The Legislature, as stated above, had *440 already improved on the Shop book rule by Chapter 288 of the Acts of 1913. This Statute had already been before the courts and interpreted. The Judicial Council stated “There are, however, records of various facts or transactions, not matters of account, which are just as reliable as account books and which we think should be dealt with in the same way”. As a result, Chapter 87 of the Acts of 1930 was passed. Though the existing section was stricken out the new section was the same as the old with new words and phrases added. Stated briefly, to accounts were added “or a writing or record” with a further description that they be “made as a memorandum or record of any act, transaction, occurrence or event”. By codification this act became Gen. Laws, (Ter. Ed.) Ch. 233, sec. 78.
Statutes are to be interpreted in connection with their development, their progress through the legislative body, the history of the time, prior legislation, etc. Pacific Wool Growers v. Commissioner of Corporations, 1940 A. S. 233, 234. To that history and prior legislation reference has already been made.
If, however, it could be found that the history of this type of legislation outside of Massachusetts suggests what the defendant seeks, the Act of 1930 would be narrower for it is really the old Statute re-enacted. The new words and phrases do not attempt to change the basic purpose of the Act of 1913, which was to make it easier for parties to put their books in evidence. The re-enactment should be interpreted as before but to permit other writings and records therein described to be as easily proved and to include any calling in the category of business. If more were intended it is fair to suppose that language would have been used to show that intention. Commonwealth v. Hartnett, 3 Gray 450, 451, King v. Thissell, 222 Mass. 140.
*441 There is nothing in the eases decided- under Acts 1913, Ch. 288, Gen. Laws 1921 Ch. 233, sec. 78; Acts 1930 Ch. 288, or. Gen. Laws (Ter. Ed.) Ch. 233 sec. 78, which justifies the position taken by the defendant.
In-the following eases records of the parties to the action were admitted. American Locomotive Co. v. Hamblen, 217 Mass. 513, Brooks Co. v. Wilson, 218 Mass. 205, Taylor v. Harrington, 243 Mass. 210, 213, Standard, Oil Co. v. Malaguti, 269 Mass. 126, Bursaw v. Pederson, 284 Mass. 471, Chadwick & Carr Co. v. Smith, 293 Mass. 293, Bodell & others v. Sawyer, 294 Mass. 534.
The only case seeming to point in the defendant’s direction is Worthen v. Burgess, 273 Mass. 437. A policy of insurance was issued on the life of William H. Burgess payable to Ethel Burgess, his wife. She' assigned her interest in the proceeds to the plaintiff Simonds (who at the beginning of the action was under conservators) to secure his advances to William H. Burgess individually or as trustee of the Lexington Building Trust and both husband and wife joined in an assignment of the policy to Simonds. On the death of William H. Burgess, Simonds brought a Bill in Equity to establish the debt of Burgess as trustee and as an individual and to have the insurance company pay the policy to Simonds. Accounts of Burgess as trustee of the Building Trust, turned over by him to his successor as trustee, Tyler, were admitted on the testimony of Tyler to show the indebtedness to Simonds. Certain promissory notes were also admitted. The Court cited Gen. Laws (Ter. Ed.) Ch. 233, see. 78 but did not discuss it or state that it was the ground on which the evidence was admitted. The facts are very different from those in the case before us. The estate of Burgess might well have been a party. The evidence was admissible on other grounds. The case gives little assistance to our defendant.
*442 On the other hand in Kaplan v. Gross, 223 Mass. 152, 154 in rejecting evidence offered under Acts of 1913, Ch. 288, the Court said, “The Statute did not enlarge the kind of evidence which could be proved by books of accounts which heretofore was admissible when supported by the evidence of all parties to the entries in the book of account”.
And in Klefbeck v. Dous, 1939 A. S. 329, where an effort was made to show that the defendant was a resident of Malden and not of Portland the Court said “The exclusion of the records of a finance company as to the residence of Dous or the place from which payments were made on account of purchase of an automobile by him from a dealer was right. It is difficult to see how the records could be considered as evidence of the place from which payments were transmitted to the finance company, and an entry upon the books of this company as to the residence of Dous apparently came from some information contained in the conditional sale agreement between Dous and the automobile dealer. The evidence was excluded as hearsay. It was not shown to have been admissible under Gen. Laws (Ter. Ed.) Ch. 233, sec. 78”.
For other cases where the evidence was rejected, see Rhoads v. N. Y. Central & Hudson R. R., 227 Mass. 138, Rockport Granite Co. v. Plum Islamd Beach Co., 248 Mass. 290, 293, Gold v. Marshall, 260 Mass. 492, Cali v. Caliri, 254 Mass. 488.
The defendant has not argued that the folder records are admissible on any other ground than that they come within the provisions of Gen. Laws (Ter. Ed.) Ch. 233, see. 78. Not having mentioned any other ground for their admission before this Division, it is fair to assume that before the trial judge they were offered solely on the same ground.
The defendant cannot have one ground at the trial and another on review. Rothwell v. First National Bank, 286 *443 Mass. 417, 422, Brown v. Brown, 208 Mass. 290, 292, and it has not attempted to do so.
However, as pointed out by the plaintiff in her brief, the records of the hospitals in the folder were not admissible under Gen. Laws (Ter. Ed.) Ch. 233, sec. 79. The records admissible under that section are those of hospitals described in Ch. 111, sec. 70. It does not appear from the evidence that the Chelsea Naval Hospital or the Soldiers’ Home at Togus comes within this description.
The agglomeration of papers contained in the folder was not all public record admissible in evidence as such. Commonwealth v. Slavski, 245 Mass. 405, 415, 416, 417. Whatever may be the rules of evidence in other jurisdictions, of Chytracek v. United States, 60 Fed. (2d) 325, 326, it is very doubtful if any of the records, restricted as they were and not open to public inspection, are public records admissible in evidence in Massachusetts courts. Gerry v. Worchester Consolidated St. Ry., 248 Mass. 559, 556, 567, Gen. Laws, Ch. 66, sec. 10.
In my opinion the report should be dismissed.